# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Towamencin Township,                    :
                    Petitioner          :
                                        :
            v.                          :
                                        :
Pennsylvania Labor Relations Board,     :   No. 789 C.D. 2020
                    Respondent          :   Argued:  June 10, 2021


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED[1]

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED:  October 7, 2022


Towamencin Township (Township) petitions this Court for review of the Pennsylvania Labor Relations Board's (Board) July 24, 2020 Final Order (Final Order) that dismissed in part and sustained in part the Township's exceptions (Exceptions) to Hearing Examiner Jack E. Marino's (Hearing Examiner Marino) Proposed Decision and Order (PDO), wherein the Board ruled that the Township violated Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA),[2] as read *in pari materia* with the act commonly referred to as Act 111.[3]  The Township

---

[1] The vote of the panel of judges that heard this case resulted in a 2 to 1 vote to reverse. Pursuant to this Court's Internal Operating Procedures, all commissioned judges vote on the opinion.  Currently, there is a vacancy among the commissioned judges of this Court and a 4-4 tie vote resulted.  Accordingly, this opinion is filed pursuant to Section 256(b) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.256(b).

[2] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a), (e).

[3] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.  "Act 111 gives police and fire personnel, who are not permitted to strike, the right to bargain collectively with their public employers."  *Fraternal Ord. of Police Fort Pitt Lodge No. 1 v. City of Pittsburgh*, 203 A.3d 965, 966 n.3 (Pa. 2019); *see also City of Pittsburgh v. Fraternal Ord. of Police Fort Pitt Lodge No. 1*, 111 A.3d 794 (Pa. Cmwlth. 2015).

presents four issues for this Court's review: (1) whether the Board misapplied the Family and Medical Leave Act of 1993 (FMLA);[4] (2) whether the Board erred as a matter of law by concluding that the Township violated a past practice concerning designation of FMLA leave for pregnancy and childbirth; (3) whether the Board considered and decided issues beyond the scope of a Charge of Unfair Labor Practices (Charge) and Complaint; and (4) whether the Board's findings of fact are supported by substantial evidence.

## Background

The Officers of the Towamencin Township Police Department (Union) is the collective bargaining representative for the Township's police officers.[5] Pursuant to Act 111 and the PLRA, the Township and the Union are parties to a collective bargaining agreement (CBA),[6] which governs the terms and conditions of the Township's police officers' employment. Relevant to this appeal, Section XIII of the CBA grants every Township police officer "unlimited [s]ick [l]eave," subject to the following relevant requirements:

> **A. SICK LEAVE** may only be used for bona fide sickness or injury which prevents an [o]fficer from performing his or her official duties and confines the [o]fficer to bed or home for the purpose of recovery, except when the [o]fficer has left the home to seek medical consultation and/or treatment which may or may not include hospitalization.
>
> . . . .

---

[4] 29 U.S.C. §§ 2601; 2611-2620; 2631-2636; 2651-2654. In Section 2654 of the FMLA, 29 U.S.C. § 2654, Congress authorized the United States Department of Labor to promulgate regulations necessary to carry out the FMLA's requirements.

[5] At the relevant time, the Township employed 23 police officers.

[6] The relevant CBA was effective January 1, 2016 to December 31, 2019. *See* Reproduced Record (R.R.) at 12a.

> **E. OFF-DUTY DISABILITY.** Any officer, who is unable to perform the essential duties of his/her position as a police officer . . . as a result of a non-work related injury or accident, for a continuous period of more than 90 days, shall be required to apply for disability insurance. . . . [B]eginning on the 91st day, the Township shall continue to pay said officer at 80% of his/her salary prior to the onset of the accident or illness for five (5) years or until the date of retirement, whichever is earlier . . . .

Board Br., App. A (CBA) at 23-24. The CBA does not contain any FMLA provisions, and **the Township does not have a separate**, **written FMLA policy for its police officers**.[7]

Detective Jamie Pierluisse (Detective Pierluisse)[8] has been a Township police officer since 2008. She was the Township's only female police officer, and the first and only officer to take leave under the FMLA for the birth of a child. In 2016, while pregnant with her first child, health issues required Detective Pierluisse to take leave from work in March 2016, seven months before her baby was due.[9] Detective Pierluisse took 90 days of short-term disability, during which she received 100% of her Township salary pursuant to the CBA. Detective Pierluisse also applied for long-term disability benefits, which eventually paid her 80% of her salary until she was cleared to return to duty. On May 6, 2016, the Township's Finance Director Maureen Doyle (Doyle) sent Detective Pierluisse a letter notifying her that her long-term disability would commence on June 18, 2016, explaining:

---

[7] There is also no record evidence that the CBA contains a maternity leave policy, or that the Township had a maternity leave policy applicable to its police officers.

[8] Detective Pierluisse has since accepted a position as Detective in the Township's Criminal Investigations Unit.

[9] Although the Board declared that Detective Pierluisse's 2016 disability was prenatal or pregnancy-related, *see* Final Order at 1, Hearing Examiner Marino made no such finding, *see* Township Br. Ex. A (PDO) at 2, R.R. at 113a ("During her first pregnancy, Detective Pierluisse had to go out on leave on March 19[] or 21, 2016, approximately six months before the birth of her first child." Finding of Fact 5). While implied, it is not clear based on the record before this Court that Detective Pierluisse's 2016 disability was prenatal or pregnancy-related.

Chief [of Police, Paul T.] Dickinson [(Chief Dickinson)] informed me you plan to take FMLA time to care for your baby. The paperwork is enclosed. Our policy[10] states you'll have 12 weeks available to you. You will have to use benefit time (excluding sick days) first and unpaid leave for the balance of the 12[-]week period.

Reproduced Record (R.R.) at 66a.

Detective Pierluisse gave birth to her first child by Cesarian section (C-section) on October 5, 2016. On October 13, 2016, Township Manager Robert Ford (Ford) sent a letter to Detective Pierluisse, stating:

I understand that you delivered your baby on October 5, 2016[,] via [C-]section, and that you are not currently cleared to return to work, with or without accommodation.

Under these circumstances, your absence due to the birth and/or care of your newborn child is FMLA[-]qualifying. Therefore, the Township is designating your absence as FMLA leave beginning on October 5, 2016, the date of your delivery. Your FMLA leave will run concurrently with the receipt of any disability benefits, as permitted by the FMLA and in accordance with the terms of the Township's FMLA policy, a copy of which is enclosed. I have also attached a notice of designation of your leave.

It is our understanding that you wish to use twelve (12) weeks of FMLA leave. Your leave of absence is therefore approved through December 28, 2016.

R.R. at 67a.

However, at some point thereafter, the Township realized that Detective Pierluisse was not eligible for FMLA leave because she had not worked the required 1,250 hours in the previous 12-month period.[11] The Township

---

[10] The **Township's FMLA policy** is only included in the Township's civilian employee handbook, which **does not apply to police officers**. *See* R.R. at 35a, 44a-45a, 55a, 58a-59a.

[11] The Township notified Detective Pierluisse's counsel of her ineligibility. Although the Township did not notify her directly, Detective Pierluisse was aware that there had been some issue with her FMLA eligibility.

nevertheless maintained its approval of Detective Pierluisse's absence for 12 weeks of leave (i.e., through December 28, 2016). Detective Pierluisse received long-term disability benefits for 8 weeks after she gave birth, and then used her paid time off (i.e., vacation and holiday time) (PTO) to cover her remaining 4 weeks in 2016. *See* R.R. at 20a, 43a, 86a. She returned to duty on January 2, 2017.

Detective Pierluisse became pregnant again in 2017. On October 31, 2017, Detective Pierluisse informed the Township that her doctor instructed her to stop working as of November 22, 2017. The Township approved Detective Pierluisse's use of PTO to cover the week of November 22 through 26, 2017, and she began her leave of absence effective November 27, 2017. Detective Pierluisse again took 90 days of short-term disability, during which she received 100% of her Township salary pursuant to the CBA. Detective Pierluisse also applied for long-term disability benefits, which paid her 80% of her salary until she was cleared to return to duty.

On December 5, 2017, Ford and Doyle called Detective Pierluisse and notified her that she was approved for FMLA leave for the birth of her second child as of November 27, 2017, the day she stopped working. Detective Pierluisse expressed that she had expected her leave to run the way it had in 2016, such that she would have 12 weeks *after* the birth to care for her child, heal from the second C-section, and physically prepare for her return to duty. *See* R.R. at 21a, 26a. Ford informed Detective Pierluisse that if she needed additional time off after she was cleared to return to work, she could discuss that with Chief Dickinson or the Police Department's Lieutenant.[12] *See* R.R. at 51a, 57a.

By December 5, 2017 letter, Ford confirmed:

---

[12] The record does not contain the Lieutenant's name.

5

Your absence due to your pregnancy, birth, and care of your newborn child is [FMLA-]qualifying.[13] Therefore, the Township is designating your absence as FMLA leave beginning on November 27, 2017, the date that you went out on leave. Your FMLA leave will run concurrently with the receipt of any disability benefits, as permitted by the FMLA and in accordance with the terms of the Township's FMLA policy, a copy of which is enclosed. I have also attached a notice of designation of your leave.

It is our understanding that you wish to use twelve (12) weeks of FMLA leave. Your leave of absence pursuant to the FMLA is approved and your period of FMLA will run through February 18, 2018. If you do not wish to utilize twelve (12) weeks of leave or your circumstances change, please contact [Doyle] or me . . . .

R.R. at 77a-78a. The Township enclosed an FMLA Notice of Eligibility and Rights & Responsibilities form (Form WH-381) on which the Township designated that Detective Pierluisse was eligible for 12 weeks of FMLA leave for a serious health condition beginning November 27, 2017. *See* R.R. at 79a. The Form WH-381 reflected that Detective Pierluisse would be required to "use [her] available paid . . . vacation, and/or other leave during [her] FMLA absence[,]"[14] and report her status every four weeks. R.R. at 80a.

Detective Pierluisse gave birth to her second child by C-section on January 10, 2018. On January 12, 2018, the Union notified the Township:

We believe the FMLA should be effective with a new starting date of Wednesday[,] January 10[,] 2018[,] coinciding with the birth [of] Detective Pierluisse's second child. This would follow with [the] doctrine of past

---

[13] The Township designated on the FMLA form that Detective Pierluisse's "own serious health condition" was the FMLA-qualifying event. R.R. at 79a; *see also* R.R. at 59a. Notwithstanding, the Township's December 5, 2017 letter and Ford's testimony confirmed, and the Township does not dispute, that Detective Pierluisse's entire leave was FMLA-qualifying.

[14] The Form WH-381 explained: "This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement." R.R. at 80a.

practice established by the [T]ownship and how it was applied to Detective Pierluisse's first pregnancy leave.

Again[,] said [p]ast practice was established during Detective Pierluisse's first pregnancy when the FMLA leave was applied from the date of birth[] of [her] daughter Amelia, rather than the day Detective Pierluisse started sick leave. The current FMLA leave having already been started by the [T]ownship is now going against said past practice. We further believe this is actually a matter of collective bargaining. We wish to avoid litigation and the legal bill this will generate for both sides in said matter. We request the [T]ownship [sic] reverse its current position.

R.R. at 87a.

On January 16, 2018, the Union filed the Charge with the Board, alleging therein that the Township violated Section 6(1)(a) and (e) of the PLRA, as read *in pari materia* with Act 111, by designating Detective Pierluisse's absence as FMLA-protected leave beginning on November 27, 2017 (the date her leave began), rather than on January 10, 2018 (the date she gave birth to her second child). *See* R.R. at 4a-5a. The Union declared that, by designating Detective Pierluisse's absence as FMLA leave on the earlier date, the Township unilaterally changed its policy of commencing FMLA leave for childbirth on the date of delivery without negotiating with the Union, and violated an alleged past practice established during Detective Pierluisse's leave of absence for the birth of her first child. *See id*. After reviewing the Charge, on January 31, 2018, the Board issued a Complaint and Notice of Hearing. *See* R.R. at 6a-12a.

On February 1, 2018, the Township responded to the Union's January 12, 2018 notice, in pertinent part, as follows:

After thorough review of the circumstances, the Township has concluded that it appropriately designated Detective Pierluisse's absence as FMLA leave beginning on November 27, 2017, the date she qualified for leave under

7

the statute. Therefore, the Township will deny your request that it revise its designation of leave.

As an initial matter, the decision to designate leave as FMLA under these circumstances constitutes a managerial prerogative. The manner in which the Township designated [Detective] Pierluisse's leave previously did not establish a past practice contrary to the Township's position; it is an example of how the Township handled one prior situation, not evidence of how the Township has reacted to a recurring situation.

In addition, the factual circumstances surrounding Detective Pierluisse's prior leave are distinguishing. Specifically, as explained to [the Union's counsel] in correspondence dated November 11, 2016, the Township approved Detective Pierluisse for FMLA leave in 2016 in error, since she had not worked the required 1,250 hours to be eligible for leave. However, the Township granted her [] leave commencing at the birth of her first daughter, because it had previously communicated approval of her request for leave.

The Township will consider any requests to use accrued paid leave to extend Detective Pierluisse's absence beyond March 6, 2018, the date her [l]ong[-t]erm [d]isability leave will expire.

R.R. at 94a-95a.

Detective Pierluisse returned to duty on March 7, 2018, after her obstetrician issued her eight-week postpartum medical clearance.[15] *See* R.R. at 71a. However, Detective Pierluisse used PTO and worked only two days per week for the next four weeks. *See* R.R. at 23a.

---

[15] Although Detective Pierluisse testified that she had concerns about her physical ability to perform her job duties when she returned to work, *see* R.R. at 22a-23a, she admitted that she did not share them with Ford or Chief Dickinson and, although she purportedly expressed them to her doctor, her doctor nevertheless released her to return to work without limitations. *See* R.R. at 29a-32a, 61a.

According to the Board, had the Township applied Detective Pierluisse's FMLA leave as she requested, she would have had off work until April 4, 2018, to care for her second child. *See* Board Br. at 6 n.1.

8

Hearing Examiner Marino conducted a hearing on May 10, 2019. *See* R.R. at 13a-105a. Detective Pierluisse testified that during her December 5, 2017 conversation with Ford, after telling him that she anticipated her FMLA leave running from the date she gave birth to her second child, Ford informed her that the Township had adopted a new FMLA policy for its police officers, and he had no choice but to calculate her FMLA-qualifying leave on the day her leave began - November 27, 2017. *See* R.R. at 21a-22a. She expressed to him that, based on her reading of the FMLA, she could choose when her FMLA leave would commence; however, Ford responded that, although she had a choice, the Police Department was short on police officers and the Township "really needed [her] back." R.R. at 21a. Detective Pierluisse recalled expressing her concerns to Ford about not being physically capable of returning by the Township's February 18, 2018 deadline, and Ford rejoined: "Well, we'll be sorry to see you go." R.R. at 21a.

Ford admitted that, although he is part of the Township's collective bargaining team, he has never bargained with the Union about applying the FMLA, and it is not included in the CBA. *See* R.R. at 50a, 53a, 55a. He explained that the Township relied upon the FMLA itself and the United States Department of Labor (DOL), Employment Standards Administration, Wage and Hour Division, Fact Sheet #28 (DOL Fact Sheet #28), in making its decision. *See* R.R. at 56a, 90a, 98a-105a. Ford claimed that the Township did not change its FMLA policy; rather, over the intervening time between Detective Pierluisse's pregnancies, the Township learned more about the FMLA's requirements. *See* R.R. at 51a, 54a, 57a, 59a. He also testified that staff predictability is important when managing the Township's police officer coverage, and the Police Department was in a constant flux because of absences due to retirement vacancies, administrative leaves, new hires, training, vacations, illnesses, and/or injury. *See* R.R. at 62a-63a.

9

The parties filed post-hearing briefs. On October 24, 2019, Hearing Examiner Marino issued the PDO, wherein he concluded that "[t]he Township has committed unfair labor practices within the meaning of Section 6(1)(a) and (e) of the PLRA as read *in pari materia* with Act 111," because the FMLA is a mandatory subject of bargaining, and the Township unilaterally changed a past practice of allowing officers to dictate when to commence FMLA leave. Township Br. Ex. A (PDO) at 17. Hearing Examiner Marino ordered the Township to, *inter alia*: immediately restore its FMLA policy that was in place prior to December 5, 2017; permit officers to choose when they take FMLA leave, and cease requiring officers to commence FMLA leave concurrently with paid leave benefits against their will; immediately reimburse Detective Pierluisse for any out-of-pocket expenses, including day care expenditures and other related costs; and immediately make Detective Pierluisse whole for any leave use affected by the expiration of her FMLA-designated leave before 12 weeks following the birth of her second child. *See* PDO at 18.

On November 13, 2019, the Township filed the Exceptions, arguing that Hearing Examiner Marino misconstrued the fundamental principles underlying the FMLA and interpretive legal authorities to conclude that the Township committed an unfair labor practice. *See* R.R. at 106a-130a. Specifically, the Township asserted:

> 8. [] Hearing Examiner [Marino] erred as a matter of law and abused his discretion and authority by requiring the Township to ignore its statutory obligation to designate qualified leave taken by eligible employees as leave protected by the FMLA.
>
> 9. [] Hearing Examiner [Marino] erred as a matter of law in concluding that designation of FMLA leave is not a managerial prerogative. ([PDO] pp. 15-17). In reaching this conclusion, [] Hearing Examiner[] [Marino's]

10

decision was contrary to the provisions of the FMLA and the overall policies and goals of Act 111 and the [PLRA].

10. [] Hearing Examiner [Marino] erred as a matter of law and abused his discretion by concluding that a single prior instance regarding designation of FMLA leave for the birth of a child was legally sufficient to establish a binding past practice of the parties. ([PDO] p. 16).

11. [] Hearing Examiner [Marino] erred as a matter of law in concluding that the Township's designation of leave pursuant to its obligations under the FMLA operates as a "sword" to "reduce the length of leave for employes who are temporarily unable to perform the functions of their jobs." ([PDO] p. 17).

12. [] Hearing Examiner [Marino] erred as a matter of law and abused his discretion by requiring public employers to provide leave in excess of that provided under the FMLA and existing case precedent. ([PDO] p. 17).

R.R. at 108a-109a. On December 6, 2019, the Union opposed the Exceptions, claiming that Hearing Examiner Marino correctly interpreted the FMLA and found that the Township committed an unfair labor practice. *See* R.R. at 131a-137a. The Township and the Union submitted briefs in support of their positions on December 11, 2019 (*see* R.R. at 138a-194a), and February 28, 2020 (*see* R.R. at 195a-213a), respectively.

On July 24, 2020, the Board issued the Final Order, wherein it held that "the reimbursement of day care expenses is not a benefit provided for in the parties' CBA and, therefore, Detective Pierluisse is not entitled to reimbursement for those personal expenses," Township Br. Ex. A (Final Order) at 12, but otherwise declared that Hearing Examiner Marino

> properly concluded that the Township violated its statutory duty to bargain under Section 6(1)(a) and (e) of the PLRA by unilaterally requiring Detective Pierluisse to use contractual leave concurrently with unpaid FMLA leave benefits contrary to its past practice of permitting

11

employes to use contractual leave prior to unpaid FMLA benefits.

Final Order at 13. Accordingly, the Board sustained the Township's Exceptions in part and dismissed them in part, and made the PDO absolute and final, as modified. The Township appealed to this Court.[16]

The parties agree, and substantial evidence supports,[17] the following relevant facts as found by Hearing Examiner Marino: **the Township does not have an FMLA leave policy for its police officers** (PDO Finding of Fact (FOF) 35, R.R. at 119a); the CBA does not address FMLA leave (FOF 35, R.R. at 119a); Detective Pierluisse was not eligible for FMLA leave related to the pregnancy and birth of her

---

[16] This Court's "review of the Board's order is limited to determining whether constitutional rights were violated, whether the Board committed an error of law, or whether the Board's findings are supported by substantial evidence." *Bristol Twp. v. Pa. Lab. Rels. Bd.*, 230 A.3d 523, 526 n.6 (Pa. Cmwlth. 2020).

> Furthermore, it is well settled that a decision of the Board must be upheld if the Board's factual findings are supported by substantial evidence, and if the conclusions of law drawn from those facts are reasonable, [and/or] not capricious, arbitrary, or illegal. Substantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Lancaster Cnty. v. Pa. Lab. Rels. Bd.*, 124 A.3d 1269, 1286 (Pa. 2015) (citation and quotation marks omitted).

On August 28, 2020, the Union intervened in this matter. On December 30, 2020, the Pennsylvania State Association of Township Supervisors filed an Amicus Curiae Brief in support of the Township's appeal.

[17] "Generally, because the hearing examiner is best able to observe the manner and demeanor of the witnesses, the Board gives deference to the hearing examiner's decision to credit some, all, or none of a witness's testimony. The Board will not disturb the hearing examiner's credibility determinations absent compelling circumstances." *Pa. State Troopers Ass'n v. Pa. State Police*, 33 PPER ¶ 33011 (2001). Here, the Board adopted Hearing Examiner Marino's crediting of Detective Pierluisse's testimony over Ford's testimony regarding their December 5, 2017 conversation. *See* Final Order at 7. "[I]f the Board's findings are supported by substantial evidence, they are conclusive for purposes of appellate review." *Kaolin Workers Union v. Pa. Lab. Rels. Bd.*, 140 A.3d 748, 751 n.6 (Pa. Cmwlth. 2016) (quoting *Blue Mountain Mushroom Co. v. Pa. Lab. Rels. Bd.*, 735 A.2d 742, 746 (Pa. Cmwlth. 1999)).

first child because she had not worked the required 1,250 hours during the preceding 12 months (FOF 11, R.R. at 114a); the Township nevertheless granted Detective Pierluisse 12 weeks of non-FMLA leave that it calculated beginning when her first child was born (FOFs 11-14, R.R. at 114a); Detective Pierluisse became pregnant with her second child in 2017 (FOF 15, R.R. at 114a); effective November 27, 2017, Detective Pierluisse took leave from work for a serious health condition related to her second pregnancy (FOFs 15-19, R.R. at 114a-115a); Detective Pierluisse requested 12 weeks of leave after the birth of her second child (FOFs 19, 24, R.R. at 115a-117a); the Township notified Detective Pierluisse that her leave beginning on November 27, 2017, was FMLA-qualifying (FOFs 19, 24, R.R. at 115a-117a); the Township designated Detective Pierluisse's leave as FMLA leave, and elected to have it run concurrently with her paid leave (FOFs 19, 24-25, R.R. at 115a-117a);[18] the Township calculated Detective Pierluisse's FMLA leave as of November 27, 2017, when her FMLA-qualifying leave commenced (FOFs 19-20, R.R. at 115a-116a); and Detective Pierluisse received 12 weeks of leave - the approximately 6 weeks before her second child was born was FMLA-qualifying as a serious health condition related to her pregnancy, and the approximately 6 weeks after her child was born was FMLA-qualifying for the birth and/or care of a newborn child (FOF 26, R.R. at 117a).

## Discussion

The "institution of unfair [labor] practice charges is fueled entirely by complainants[.]" *Teamsters Local 771 v. Pa. Lab. Rels. Bd.*, 760 A.2d 496, 502 (Pa. Cmwlth. 2000). Here, the Union claimed in the Charge:

---

[18] As a result, Detective Pierluisse received sick leave pay for the first 90 days, and she received long-term disability thereafter until she was medically released to return to work on March 7, 2018. She used her available PTO to work part-time for an additional four weeks.

13

12. Policy concerning implementation of FMLA leave is a mandatory subject of bargaining.

13. [Ford's] change in the commencement of FMLA [leave] for the birth of [Detective Pierluisse's] child on December 5, 2017, was a unilateral change in working conditions without bargaining with the [Union].

14. In unilaterally changing the FMLA policy on December 5, 2017, the [] Township violated an established past practice regarding the implementation of FMLA leave with regard to childbirth coverage.

R.R. at 5a.[19] The Union bears the burden of proving the allegations in the Charge. *Lancaster Cnty. v. Pa. Lab. Rels. Bd.*, 124 A.3d 1269 (Pa. 2015). The Board's jurisdiction to find an unfair labor practice is limited to the Charge.[20] *Teamsters Local Union No. 384 v. Kennett Consol. Sch. Dist.*, 37 PPER ¶ 89 (2006).[21] Thus, in order to prevail on the Charge, the Union had to prove that the **Township had a policy** regarding when FMLA leave for the birth and care of a newborn child

---

[19] Notwithstanding the Dissent's claim to the contrary, because the Union expressly limited its Charge to specific instances of police officer childbirth-related FMLA leave, *see* R.R. at 5a, non-childbirth-related FMLA coverage cannot be "fairly subsumed in the Union's Charge[.]" *Towamencin Twp. v. Pa. Lab. Rels. Bd.*, __ A.3d __ (Pa. Cmwlth. No. 789 C.D. 2020, filed Oct. 7, 2022), slip op. at 4 (Fizzano Cannon, J., dissenting).

Accordingly, Hearing Examiner Marino announced: "The Union specifically alleged that the Township violated its bargaining obligation when it changed its policy of designating the start of FMLA leave for [Detective] Pierluisse's second pregnancy and childbirth from the policy it applied to her first pregnancy and childbirth." PDO at 1. The Board also framed the issue as follows: "The Union specifically alleged that the Township violated its bargaining obligation when it changed its policy [from when Detective Pierluisse was pregnant with and gave birth to her first child in 2016] concerning the commencement of leave under the [FMLA] and use of contractual paid leave." Final Order at 1; *see also* Final Order at 11-12.

[20] "As a matter of due process, a charging party may not allege one charge and then prosecute another." *Teamsters Local Union No. 384 v. Kennett Consol. Sch. Dist.*, 37 PPER ¶ 89 (2006).

[21] This Court acknowledges that, although the Board's decisions are not binding on this Court, they may be instructive. *Cmty. Coll. of Phila. v. Pa. Lab. Rels. Bd.*, 205 A.3d 436 (Pa. Cmwlth. 2019).

commenced after FMLA leave for a prenatal or pregnancy-related serious health condition, that it **unilaterally changed such policy**, and that **the change was a mandatory subject of bargaining**.

Hearing Examiner Marino nevertheless restated the issue and in doing so expanded the Charge, stating:

> The issue under consideration in this case is whether the Township violated Section 6(1)(a) and (e) of the PLRA as read with Act 111 when it designated the commencement of FMLA leave for [Detective] Pierluisse when she left work for an FMLA[-]qualifying event resulting from her incapacity to perform police officer duties due to her second pregnancy and when she desired to use negotiated paid leave benefits instead of FMLA[-]designated leave, as the Township permitted during her first pregnancy. The Township argues that an employer has an obligation and responsibility[] under [DOL's] Regulations[] to designate qualifying leave as FMLA leave within five business days[,] and that a failure to do so could subject an employer to liability. (Township Br[.] at 9.) The case law in this area from multiple jurisdictions holds contrary to the Township's position and draws a distinction between designating leave as FMLA[-]qualifying and mandating that employes take leave under the FMLA instead of using other leave benefits.

PDO at 8.

On review of the Township's Exceptions, the Board further broadened the issue:

> [T]he issue presently before us . . . [is] whether an employer is required to collectively bargain over the discretionary aspects of the FMLA before implementing a leave policy prohibiting the "stacking" of leave benefits where two FMLA-qualifying absences occur back-to-back, such as here, where the employe suffered her own serious health condition which was then followed by the necessity to care for a newborn child.

Final Order at 11.

15

Relative to the Board's enlarged issue, the Township argues that, since Detective Pierluisse's November 27, 2017 leave for a serious health condition related to her second pregnancy was clearly FMLA-qualifying, the Township lacked discretion to delay counting the 12 weeks until the child was born, and the Township's election to have Detective Pierluisse's FMLA leave run concurrently with her paid leave is a managerial prerogative,[22] not a mandatory subject of bargaining. *See* Township Br. at 38, 41. The Township asserts that, in reaching its decision to the contrary, the Board misapplied the FMLA by interpreting that an employer must bargain over its obligation to designate qualifying leave taken by eligible employees or provide more leave than the FMLA requires.[23]

The Board responds:

> To be clear, the Board is not saying that the Township cannot require an employe to run FMLA leave entitlement concurrent with paid sick leave benefits when experiencing a serious medical condition, other than a pregnancy prior to the birth of a child.[24] Neither is the

---

[22] The Board asserts in its brief that the Township waived its argument that designation of FMLA leave is not subject to bargaining because it is a managerial prerogative by failing to raise it before the Board. *See* Board Br. at 27 n.12. However, Hearing Examiner Marino acknowledged in the PDO that the Township had raised that issue, *see* PDO at 12, R.R. at 123a, and the Township raised that argument in its Exceptions and brief in support thereof. *See* Exceptions at 3, R.R. at 108a; Br. in Support of Exceptions at 16-23, R.R. at 153a-160a. Because the Township raised the issue before the Board, it is not waived.

[23] This Court addresses the Township's claim that the Board's findings of fact are not supported by substantial evidence. The Township's other issues - that the Board erred by concluding that the Township violated a past practice, and the Board decided matters beyond the scope of the Charge - will be addressed herein in conjunction with this Court's analysis of this issue.

[24] The Dissent contends that what it terms "sick leave and parental leave under the FMLA" are so "inextricably intertwined," *Towamencin Twp.*, __ A.3d at __, dissenting slip op. at 3, that the Board's consideration of the Township's prior sick leave approval for a male police officer's knee and hip surgery was relevant in adjudicating this matter, and "fairly subsumed in the Union's Charge." *Id.*, __ A.3d at __, dissenting slip op. at 4. However, not only do the FMLA and DOL's Regulations refer to and provide for those two circumstances separately, *see* Section 2612(a)(1)(A) and (D) of the FMLA, 29 U.S.C. § 2612(a)(1)(A) and (D); *see also* Section 825.112(a)(1) and (4)

Board proposing that employers are required to provide for more than 12 weeks of FMLA[ ]leave for the care of a . . . newborn. It is the Board's position that by changing the manner in which it had allowed an employe to use the paid sick leave provisions contained in the parties' CBA during pregnancy, and use FMLA leave in connection with the care of the newborn child, without bargaining that change with the Union, the Township violated Section 6(1)(a) and (e) of the PLRA, as read *in pari materia* with Act 111.

Final Order 18-19 (footnote omitted).

This Court necessarily begins its review with a comprehensive analysis of the FMLA and PLRA/Act 111.

---

of DOL's Regulations, 29 C.F.R. § 825.112(a)(1) and (4), but they serve fundamentally different purposes. FMLA leave for a serious health condition pursuant to Section 2612(a)(1)(A) of the FMLA protects an employee's job for up to 12 weeks during which the employee is physically incapable of doing his/her job, and it ceases when the employee regains his/her physical ability to do his/her job duties. FMLA leave for birth and/or newborn childcare under Section 2612(a)(1)(D) of the FMLA, protects an employee's job after a child is born, regardless of the employee's physical ability to do the job, and may be taken up to a maximum of whatever remains of the employee's 12 weeks of FMLA protection in a given year. Moreover, the Township and the Union specifically negotiated police officer sick leave, which does not extend to a police officer's leave for birth and/or care of a newborn child. *See* Board Br., App. A (CBA) at 23-24. They could have, but did not, negotiate a police officer's leave for birth and/or care of a newborn child and, thus, are bound by the minimum unpaid leave to care for a newborn child mandated by Congress. Accordingly, the Board could not reasonably conclude that FMLA leave necessitated by a serious health condition is inextricably intertwined in the Union's Charge related solely to FMLA leave for the birth and/or newborn childcare.

Further, because the Union's Charge and the Board's argument (i.e., "*in the case of an employe's pregnancy and childbirth*, the Township is required to collectively bargain over its concurrent application of the 12[ ]weeks of FMLA [leave] to the unlimited sick and disability benefits available for the employe's use *during her pregnancy* under the CBA[,]" Board Br. at 15 (emphasis added)), are expressly limited to the circumstances of the Township's calculation of FMLA leave for an employee who experiences a prenatal- or pregnancy-related serious health condition and also seeks FMLA leave for the birth and/or care for a newborn child, the Board erred by relying on the Township's actions relative to leave taken by a male police officer for knee and hip surgery. *See* R.R. at 44a-45a. The Board clearly limited its decision to sick leave use during pregnancy and leave related to post-birth childcare, *see* Final Order at 18-19, and here concedes that this case presents "unique circumstances." Board Br. at 17 n.7.

## 1. FMLA

The FMLA is a job protection statute. *See Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721 (2003), and 29 C.F.R. § 825.207; *see also Tredyffrin/Easttown Sch. Dist. v. Tredyffrin/Easttown Educ. Ass'n*, 56 A.3d 17 (Pa. Cmwlth. 2012). Section 2612(a)(1) of the FMLA guarantees that "an eligible employee[25] shall be entitled to a total of 12 workweeks of [*unpaid*[26]] leave during any 12-month period"[27] for FMLA-specified family and medical reasons, 29 U.S.C. § 2612(a)(1) (emphasis added), during which the employer must maintain the employee's group health plan coverage, *see* Section 2614(c) of the FMLA, 29 U.S.C. § 2614(c), and after which the employee shall be "reinstate[d] . . . to the position of employment held before leave or to an 'equivalent position.'" *Tredyffrin/Easttown Sch. Dist.*, 56 A.3d at 19 n.2 (quoting 29 U.S.C. § 2614(a)(1)(B)).

Specifically,

> [e]mployers covered by [the] FMLA[28] are required to grant leave to eligible employees:

---

[25] An "eligible employee" is "an employee who has been employed . . . for at least 12 months by the employer . . . [] and [] for at least 1,250 hours of service with such employer during the previous 12-month period." Section 2611(2)(A) of the FMLA, 29 U.S.C. § 2611(2)(A).

[26] "FMLA leave is unpaid leave." Section 825.207(a) of DOL's Regulations, 29 C.F.R. § 825.207(a).

[27] Section 825.200(b) of DOL's Regulations, 29 C.F.R. § 825.200(b), states that the employer may choose a calendar year, a fixed year (i.e., fiscal year of anniversary date, a 12-month period measured forward from the employee's first FMLA leave), or a rolling 12-month period (measured backward from when the employee uses qualifying leave). The Township utilized a rolling 12-month period in 2017. *See* R.R. at 80a.

[28] Public agencies, including political subdivisions of a state, like the Township, are employers covered by the FMLA. *See* Section 203(x) of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 203(x), and Section 2611(4)(A)(iii) of the FMLA, 29 U.S.C. § 2611(4)(A)(iii). Although the FMLA applies to private employers with 50 or more employees, Section 825.104(a) of DOL's Regulations specifies that "[p]ublic agencies are covered employers without regard to the number of employees employed." 29 C.F.R. § 825.104(a).

(1) For birth of a son or daughter, and to care for the newborn child (*see* [Section 825.120 of DOL's Regulations, 29 C.F.R.] § 825.120);[29]

. . . .

(4) Because of a serious health condition that makes the employee unable to perform the functions of the employee's job (*see* [Sections 825.120 of DOL's Regulations, 29 C.F.R.] §§ 825.113[,] 825.123)[.]

Section 825.112(a) of DOL's Regulations, 29 C.F.R. § 825.112(a) (italics added); *see also* Section 2612(a)(1)(A), (D) of the FMLA, 29 U.S.C. § 2612(a)(1)(A), (D); Section 825.113 of DOL's Regulations (Serious Health Condition), 29 C.F.R. § 825.113; Section 825.120 of DOL's Regulations (Leave for Pregnancy or Birth), 29 C.F.R. § 825.120.

Although, "[g]enerally, FMLA leave is unpaid leave[,]" 29 C.F.R. § 825.207(a), Section 2612(d)(2)(A) of the FMLA specifies:

An eligible employee may elect, <u>or</u> an employer may require the employee, to substitute [(run concurrently)] any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under [FMLA Section 2612(a)(1)(A) (relating to the birth of a child)] for any part of the 12-week period of such leave under such subsection.

29 U.S.C. § 2612(d)(2)(A) (emphasis added).  Section 2612(d)(2)(B) of the FMLA similarly specifies, relative to serious health conditions:

An eligible employee may elect, <u>or</u> an employer may require the employee, to substitute [(run concurrently)] any of the accrued paid vacation leave, personal leave, or

---

[29] Section 825.112(b) of DOL's Regulations provides: "The right to take leave under [the] FMLA applies equally to male and female employees.  A father, as well as a mother, can take family leave for the birth . . . of a child."  29 C.F.R. § 825.112(b).  Section 825.120(a)(1) of DOL's Regulations also states: "Both parents are entitled to FMLA leave for the birth of their child."  29 C.F.R. § 825.120(a)(1).  In addition, Section 825.120(a)(2) of DOL's Regulations declares that "[b]oth parents are entitled to FMLA leave to be with the healthy newborn child (i.e., bonding time) during the 12-month period beginning on the date of birth."  29 C.F.R. § 825.120(a)(2).

> family leave of the employee for leave provided under [FMLA Section 2612(a)(1)(D) (relating to a serious health condition)] for any part of the 12-week period of such leave, except that nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.

29 U.S.C. § 2612(d)(2)(B) (emphasis added).

> Procedurally,

> [a]n employee taking leave under the FMLA must provide at least verbal notice to the employer sufficient to make the employer aware that the employee needs FMLA-qualifying leave. [*See*] 29 C.F.R. § 825.302(c). The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may state only that leave is needed for an expected birth or adoption, for example. *Id.* If it is necessary to have more information about whether FMLA leave is being sought by the employee, the *employer* must inquire further of the employee and obtain the necessary details of the leave to be taken. *Id.*

*Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 948 (Pa. Cmwlth. 2004); *see also* Section 825.301 of DOL's Regulations, 29 C.F.R. § 825.301.

Once an employer is aware of an eligible employee's need for potentially FMLA-qualifying leave, the employer must take affirmative steps to process the leave request. Section 825.300(b)(1) of DOL's Regulations mandates:

> When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. . . . Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave[30] for each

---

[30] Optional DOL Form WH-381, which satisfies an employer's eligibility notice obligation under Section 825.300(b)(1) of DOL's Regulations, is available on DOL's website. *See* www.dol.gov/sites/dolgov/files/WHD/legacy/files/WH-381.pdf (last visited Oct. 6, 2022); *see*

FMLA-qualifying reason in the applicable 12-month period. *See* [Section] . . . 825.200(b) [of DOL's Regulations, 29 C.F.R. § 825.200(b)].

29 C.F.R. § 825.300(b)(1). Section 825.301(a) of DOL's Regulations declares, in relevant part: "Once the employer has acquired knowledge that the leave is being taken for a[n] FMLA-qualifying reason, the employer must notify the employee as provided in [Section 825.300(d) of DOL's Regulations, 29 C.F.R.] § 825.300(d)." 29 C.F.R. § 825.301(a).

Section 825.300(d) of DOL's Regulations further requires, in pertinent part:

> (1) The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section. When the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances. . . . If the employer determines that the leave will not be designated as FMLA-qualifying (e.g., if the leave is not for a reason covered by [the] FMLA or the FMLA leave entitlement has been exhausted), the employer must notify the employee of that determination. If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave.
>
> . . . .
>
> (6) The employer must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. If the amount of leave needed is known at the time the employer designates the leave as FMLA-

---

*also* 29 C.F.R. § 825.300(b)(2). The Township issued a Form WH-381 to Detective Pierluisse with its December 5, 2017 letter.

> qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice. . . .[31]

29 C.F.R. § 825.300(d). Pursuant to Section 825.300(e) of DOL's Regulations, an employer that fails to carry out or interferes with an employee's FMLA rights may be liable for compensation, actual monetary losses, and/or other appropriate relief.[32] *See* 29 C.F.R. § 825.300(e); *see also* 29 C.F.R. § 825.301(e).

Moreover, Section 2653 of the FMLA states: "Nothing in th[e FMLA] . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under th[e FMLA] . . . ."[33] 29 U.S.C. § 2653; *see also* 29 C.F.R. § 825.700(b). "Nothing in th[e FMLA] . . . shall be construed to diminish the obligation of an employer to comply with any [CBA] or any employment benefit program or plan that provides greater . . . rights to employees than the rights established under th[e

---

[31] Optional DOL FMLA Designation Notice form WH-382 (Form WH-382), which satisfies an employer's designation notice obligations under Section 825.300(d)(1) of DOL's Regulations, is available on DOL's website. *See* www.dol.gov/sites/dolgov/files/WHD/legacy/files/WH-382.pdf (last visited Oct. 6, 2022); *see also* 29 C.F.R. § 825.300(d)(4). "If[, as in the instant matter,] the employer has sufficient information to designate the leave as FMLA leave immediately after receiving notice of the employee's need for leave, the employer may provide the employee with the designation notice at that time." 29 C.F.R. § 825.300(d)(2); *see also* DOL Fact Sheet #28: "When the employer has enough information to determine that leave is being taken for a FMLA-qualifying reason, the employer must notify the employee that the leave is designated and will be counted as FMLA leave. Employers may use the optional [F]orms WH-381 and WH-382 prepared by [DOL] to meet these notification requirements." R.R. at 104a. Although it is not clear whether the Township issued Form WH-382 to Detective Pierluisse relative to her FMLA leave request, the Township's December 5, 2017 letter supplied Detective Pierluisse with the necessary notice of its designation, in accordance with Section 825.300(d) of DOL's Regulations. *See* R.R. at 77a-78a.

[32] "[A]n employer violates the FMLA when it violates either the FMLA statute itself . . . or its implementing [DOL R]egulations." *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 937 (S.D. Ohio 2004).

[33] Likewise, "[n]othing in [the] FMLA supersedes any provision of [s]tate or local law that provides greater family or medical leave rights than those provided by [the] FMLA." 29 C.F.R. § 825.701(a). The parties have not proffered that Pennsylvania or the Township has any such law.

FMLA] . . . [,]"[34]  Section 2652(a) of the FMLA, 29 U.S.C. § 2652(a), and "[t]he rights established for employees under th[e FMLA] . . . shall not be diminished by any [CBA] or any employment benefit program or plan."  29 U.S.C. § 2652(b); *see also* Section 825.700(a) of DOL's Regulations, 29 C.F.R. § 825.700(a).  Thus, in the absence of a more generous leave policy, or where an employer's policy conflicts with the FMLA, the FMLA controls.  *See* 29 U.S.C. § 2652; *see also Callison v. City of Phila.*, 430 F.3d 117 (3d Cir. 2005).

**FMLA-Qualifying Leave Limited to 12 Weeks Unpaid Leave**

In its brief to this Court, the Board asserts that Detective Pierluisse's leave necessitated by her pre-birth serious health condition, and the birth and/or care of her newborn are "discrete FMLA-qualifying event[s]," Board Br. at 15, and that "the Township lumped her pregnancy in with the birth and care of her newborn." Board Br. at 17 n.7.  The Board adds that, "[b]y insisting that there are only 12 weeks of job security under the FMLA, the Township and [the Pennsylvania State Association of Township Supervisors (Amicus)] appear to take the position that employes are only permitted 12 weeks of leave under the FMLA[,]" regardless of contractual sick leave and disability benefits.  Board Br. at 18 n.8.  The Board's (and the Dissent's) position appears to be that Detective Pierluisse was entitled to sick leave plus disability leave for her own serious health condition, and another 12 weeks of FMLA leave for the care and/or birth of her second child.

However, Section 825.200(a) of DOL's Regulations declares that "an eligible employee's FMLA leave entitlement is limited to a *total* of 12 workweeks of leave during any 12-month period *for any one, or more*, of the [qualifying]

---

[34] "'The purpose of the FMLA is to make leave available to eligible employees and employers within its coverage, and not to limit already existing rights and protection.'  S. Rep. No. 103-3, at 38 (1993)."  29 C.F.R. § 825.702(a).

23

reasons[.]" 29 C.F.R. § 825.200(a) (emphasis added); *see also* November 17, 2005 DOL Op. Letter FMLA 2005-3-A ("The fact that an employee may be eligible for and takes leave for more than one FMLA-qualifying condition does not change the fact that an employee is entitled to a total of 12 weeks of FMLA leave within the [] 12-month period." *Id.* at 2.); Jeanna E. Crocker, J.D., Senior Legal Ed., *Fam. & Med. Leave Handbook* ¶ 261, How To Count Weeks, 2017 WL 11001961. In addition, the United States Supreme Court ruled in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), that former Section 825.700(a) of DOL's Regulations, which required Wolverine World Wide, Inc. to grant Ragsdale 12 additional weeks of leave because Wolverine had not informed Ragsdale that her 30-week absence would count against her FMLA entitlement, was contrary to the FMLA and exceeded DOL's authority, because, *inter alia*, it amended the FMLA's guarantee of *only* 12 weeks of leave. The *Ragsdale* Court observed:

> Like any key term in an important piece of legislation, the 12-week figure was the result of compromise between groups with marked but divergent interests in the contested provision. Employers wanted fewer weeks; employees wanted more. *See* H.R. Rep. No. 102-135, pt. 1, p.37 (1991). Congress resolved the conflict by choosing a middle ground, a period considered long enough to serve "the needs of families" but not so long that it would upset "the legitimate interests of employers." [Section 2601(b)(1), (3) of the FMLA, 29 U.S.C.] § 2601(b)[(1), (3)].
>
> Courts and agencies must respect and give effect to these sorts of compromises.

*Ragsdale*, 535 U.S. at 93-94.

As Section 2612(a)(1)(A) of the FMLA makes clear, leave for the birth and/or care of a newborn child commences when the child is born. A prenatal- and pregnancy-related health issue that renders an employee incapable of performing the functions of the job constitutes a serious health condition under Section

24

2612(a)(1)(D) of the FMLA,[35] the leave for which commences when the incapacity begins. Thus, if an employee uses FMLA leave for a pregnancy-related serious health condition before the child is born, an employer may limit the length of an employee's FMLA leave related to the birth and/or care of a newborn child to the "amount of FMLA leave remaining in [that employee's] allotment for that 12-month period."[36] *Fam. & Med. Leave Handbook* ¶ 130, FREQUENTLY ASKED LEAVE QUESTIONS ("*Q: Can an employer limit the amount of FMLA leave an employee may take after giving birth?*"), 2003 WL 25316974;[37] *see also id.* ("*Q: . . . If an employee*

---

[35] Section 2611(11)(B) of the FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.102. Section 825.115(b) of DOL's Regulations provides: "A serious health condition involving continuing treatment by a health care provider includes . . . [a]ny period of incapacity due to pregnancy, or for prenatal care. *See also* [29 C.F.R.] § 825.120." 29 C.F.R. § 825.115; *see also* DOL Fact Sheet #28, R.R. at 102a-103a. Section 825.120(a)(4) of DOL's Regulations acknowledges, in relevant part:

> The expectant mother is entitled to FMLA leave for incapacity due to pregnancy, for prenatal care, or for her own serious health condition following the birth of the child. Circumstances may require that FMLA leave begin before the actual date of birth of a child. An expectant mother may take FMLA leave before the birth of the child for prenatal care or if her condition makes her unable to work.

29 C.F.R. § 825.120(a)(4). Therefore, women who experience prenatal- and pregnancy-related health issues that render them unable to perform their job functions are entitled to leave under Section 2612(a)(1) of the FMLA because of a "serious health condition." 29 U.S.C. § 2612(a)(1)(D).

[36] Although not applicable in the instant matter, such is the case even if a state or local law also provides for family and medical leave. *See* Section 825.701(a) of DOL's Regulations, 29 C.F.R. § 825.701(a).

[37] A: An eligible employee working for a covered employer is entitled to take 12 weeks of FMLA leave in a 12-month period for the birth of a child. The only way an employer may limit the length of the FMLA leave in such cases is when the employee has a limited amount of FMLA leave remaining in her allotment for that 12-month period. If the employee has available other forms of leave, such as vacation or sick leave, which may be used for such purposes, the employee may take such leave. If the employee has no other

25

*uses part o[r] all of her FMLA leave before she needs leave for a pregnancy, does she still have a right to additional FMLA leave?*").[38] Congress clearly intended for eligible employees to have *a total of 12 weeks* of job-protected, unpaid leave within a 12-month period for all FMLA-qualifying events during the 12-month period, even if the FMLA-qualifying event changes during that time.

Accordingly, under the FMLA, Detective Pierluisse was limited to a *total* of 12 weeks of job-protected, unpaid leave for the consecutive events of her serious health condition *and* birth and/or care of her second child. Detective Pierluisse's entitlement to unlimited sick leave under the CBA did not change the fact that her FMLA-protected leave was statutorily limited to 12 weeks during the

<hr>

leave available, there would be no additional FMLA leave provided; instead, it would be counted as unpaid leave, if available from the employer.

An employer may not limit, as a matter of policy, an employee to six or eight weeks of maternity leave, if that employee has available her full allotment of FMLA leave and wishes to take that FMLA leave following the birth of her child.

FREQUENTLY ASKED LEAVE QUESTIONS, ¶ 130-7, 2003 WL 25316974.

[38] A: No. Congress may have had pregnancy leave in mind when it passed [the] FMLA, but only 12 weeks of leave for any and all qualifying events are available.

That may not be the end to the discussion. Although the federal law provides for 12 weeks of leave under [the] FMLA, some states, such as California, have separate pregnancy/bonding leaves with separate criteria and separate entitlements. As a result, an employer should consult its state's law. (See the summary of state leave laws in Tab 700 of the *Handbook*.)

Further, there is nothing to prevent an employer from offering more leave to accommodate its employees' medical events if it does so in a gender-neutral way. And a pregnant employee may qualify for short-term disability leave, independent of [the] FMLA requirements, depending on her physical condition and the employer's disability leave insurance requirements.

FREQUENTLY ASKED LEAVE QUESTIONS, ¶ 130-7, 2003 WL 25316974.

12-month period. Once she was cleared by her physician to return to work on March 7, 2018, Detective Pierluisse was no longer entitled to sick leave/long-term disability under the CBA, and she could only invoke the number of unused FMLA weeks she had remaining to care for her newborn.[39] The Board and the Dissent's position that Detective Pierluisse was entitled to an additional 12 weeks of FMLA leave after the birth of her second child is contrary to the FMLA and DOL's Regulations, because it will provide her more than the statutorily permitted 12 weeks of FMLA, put the Township in an adverse position of treating employees differently, and is contrary to the law's concern with open-ended leave that unduly burdens the Township's legitimate interests. *See* 29 U.S.C. § 2601(b); *see also Ragsdale*; *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1205-06 (11th Cir. 2001).

**Board Authority to Interpret the FMLA**

Notably, "a labor union . . . cannot bring an action under [the] FMLA as a matter of law, whether on its own or on behalf of its members." *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 283 F. Supp. 3d 72, 89 (S.D.N.Y. 2017). Moreover, DOL's Regulations declare that "[s]tates may not enforce the FMLA." 29 C.F.R. § 825.701(a). Further, although "[w]hen considering an agency's interpretation of a statute [] it is charged with implementing and enforcing, [courts] afford substantial deference to that interpretation[,]"[40] *Off. of*

---

[39] That was the case whether Detective Pierluisse's FMLA for sick leave ended and her FMLA for parental leave began the day her second child was born on January 10, 2018, or whether her FMLA for sick leave ended and her parental leave began on March 7, 2018, the day she was cleared to return to work. In either event, Detective Pierluisse was only entitled to a total of 12 weeks of FMLA-protected leave.

[40] An agency's interpretation of its governing statute is entitled to deference *if* it is consistent with the statute itself, and in the absence of fraud, bad faith, or an abuse of discretion. *See Off. of Admin. v. Pa. Lab. Rels. Bd.*, 916 A.2d 541 (Pa. 2007).

*Admin. v. Pa. Lab. Rels. Bd.*, 916 A.2d 541, 550 n.11 (Pa. 2007),[41] a *state* agency's interpretation of a *federal* statute is not entitled to such deference. *See Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 66 A.3d 301 (Pa. 2013) (Commonwealth agency interpretation of a law it is not charged with administering or enforcing is not entitled to deference); *see also Twp. of Bordentown N.J. v. Fed. Energy Regul. Comm'n*, 903 F.3d 234 (3d Cir. 2018); *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491 (3d Cir. 2001). Even when an agency is authorized to interpret a law, "no deference is due where [the] agency exceeds its legal authority or its interpretation is clearly erroneous." *Marcellus Shale Coal. v. Dep't of Env't Prot.*, 193 A.3d 447, 462-63 (Pa. Cmwlth. 2018). Thus, in this case, the *Board's* interpretation of the FMLA is *not* entitled to deference.

**FMLA Leave Designation Not Discretionary**

Congress expressly authorized *DOL* to interpret the FMLA and promulgate the Regulations to carry out the FMLA's requirements. *See* Section 2654 of the FMLA, 29 U.S.C. § 2654. DOL initially promulgated its implementing Regulations in 1995, and subsequently amended them in 2008.[42]

---

[41] *See also Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056 (Pa. 2018), *order amended on reconsideration*, 203 A.3d 964 (Pa. 2019).

[42] Congress authorized [DOL] to promulgate regulations implementing the FMLA. 29 U.S.C. § 2654. [DOL's] reasonable interpretations of the statute are therefore entitled to deference under *Chevron U[.]S[.]A[.,] Inc. v. Natural Resources Defense Council*, 467 U.S. 837 . . . (1984). *See Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191 (9th Cir. 2000) (agency's interpretation of statute pursuant to statutory delegation of authority is entitled to *Chevron* deference); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 5 (1st Cir. 1998) ([DOL's R]egulations were promulgated pursuant to statutory delegation and are entitled to *Chevron* deference).

At issue in this case is Section 825.300 of DOL's Regulations, wherein DOL mandates that, once an employer learns that an employee's leave request is for an FMLA-qualifying reason, "**the employer must notify the employee of the employee's eligibility to take FMLA leave within 5 business days**," 29 C.F.R. § 825.300(b)(1) (emphasis added), and "[t]**he employer is responsible in all circumstances for designating leave as FMLA-qualifying**, **and for giving notice of the designation to the employee** . . . **whether the leave will be designated and will be counted as FMLA leave** within five business days[.]" 29 C.F.R. § 825.300(d) (emphasis added); *see also* 29 C.F.R. § 825.301(a).

The Township asserts that the *designate and count* language in Section 825.300(d)(1) of DOL's Regulations *requires* an employer to: (1) notify the employee that his/her leave request is FMLA-eligible; (2) designate the requested leave as FMLA-qualifying and begin counting it against his/her FMLA leave entitlement as of when it commenced; and (3) notify the employee of the designation and that it will be counted. The Board claims that, since those provisions are nothing more than mandatory *notice* requirements that do not impose an affirmative duty on an employer to immediately designate and commence counting FMLA-qualifying leave, they are discretionary.

"When interpreting a regulation, a court must first determine whether the regulation itself is 'genuinely ambiguous.'" *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 529 (E.D. Pa. 2019) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)). "[A court's] starting point on any question concerning the application of a [federal] regulation is its particular written text." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3d Cir. 2007) (quoting *Wilson v. U. S. Parole Comm'n*, 193 F.3d 195, 197 (3d Cir. 1999)). Based on the

*Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123 n.9 (9th Cir. 2001). Accordingly, DOL's Regulations, which were subject to notice and comment, are generally entitled to deference.

federal rules of statutory construction, which apply to DOL's Regulations,[43] this Court must "consider the particular [regulatory] language, as well as the design of the [regulation] and its purposes in determining the meaning of a federal [regulation]." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 51 (Pa. 2011). "[I]f the [regulation's] language is clear, [courts] should refrain from searching other sources in support of a contrary result."[44] *Id.*

Relevant to the instant matter, Section 825.300 of DOL's Regulations mandates that, within five days of an employee's leave request, the employer must notify the employee whether such leave is FMLA-eligible. *See* 29 C.F.R. § 825.300(b)(1). An employer's designation obligation exists even if the employee does not request or even reference FMLA leave. *See* 29 C.F.R. § 825.301(b); *see also Eshbach*. The employer is *also* "responsible **in all circumstances for designating leave as FMLA-qualifying**, *and* **for giving notice** of the designation to the employee[.]" 29 C.F.R. § 825.300(d)(1) (emphasis added). The above-quoted provision clearly includes two parts: (1) designation; *and* (2) notice. The reference therein that an "employer must notify the employee *whether* the leave will be designated and will be counted as FMLA leave within five business days[,]" *id.* (emphasis added), does not render an employer's designation optional. Further, DOL expressly provides as an example that "leave will not be designated as FMLA-qualifying" "if the leave is not for a reason covered by [the] FMLA or the FMLA leave entitlement has been exhausted[.]" *Id.* Thus, under Section 825.300(d)(1) of

---

[43] "The basic tenets of [federal] statutory construction apply to construction of [federal] regulations . . . ." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3d Cir. 2007).

[44] "A court does not defer to an administrative agency's interpretation of the plain meaning of an unambiguous statute because statutory interpretation is a question of law for the court." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 677 (Pa. 2020); *see also Chevron*.

DOL's Regulations, an employer *shall designate* that the leave is FMLA-qualifying *and count* it against an employee's 12-week entitlement when the leave commences.

Based on the foregoing, the text of Section 825.300(d) of DOL's Regulations clearly specifies that, once a covered employer becomes aware that an eligible employee is taking FMLA-qualifying leave, the employer *shall designate it* as FMLA leave *and count it* against the employee's FMLA entitlement when the leave commences. Accordingly, the Township lacked discretion to delay counting Detective Pierluisse's FMLA leave until after her second child was born.

Even assuming, *arguendo*, that Section 825.300(d) of DOL's Regulations is ambiguous, the result would be the same. To the extent a regulation is ambiguous, this Court may look beyond its text to agency rulings, interpretations, and opinions, which are entitled to deference if not clearly erroneous.[45] *See Christopher v. Smith-Kline Beecham Corp.*, 567 U.S. 142 (2012); *see also Christensen v. Harris Cnty.*, 529 U.S. 576 (2000); *Auer v. Robbins*, 519 U.S. 452 (1997);[46] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *Belt*.

Importantly, "the FMLA does not expressly state [that] an employee may defer the exercise of FMLA rights under the statute." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014). The Board claims that Section 825.300(d)(1) of DOL's Regulations does not and cannot mandate an employer to immediately designate and count FMLA leave, because case law has established that an employee has the option of declining or delaying FMLA protection.[47] The Board

---

[45] DOL opinions "are [generally] entitled to the level of deference announced in *Skidmore v. Swift & Co.*, 323 U.S. 134 . . . (1944) [(i.e., *Skidmore* deference)]. They 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' *Id*. at 140 . . . [.]" *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1308 (10th Cir. 2011).

[46] *Auer* was superseded by statute on other grounds. *See Higgins v. Bayada Home Health Care, Inc.* (M.D. Pa. No. 3:16-CV-02382, filed Sept. 22, 2021), 2021 WL 4306125.

[47] The Dissent agrees. *See Towamencin Twp.*, __ A.3d at __, dissenting slip op. at 8.

relies on *Escriba*, and *Gravel v. Costco Wholesale Group*, 230 F. Supp. 3d 430 (E.D. Pa. 2017), for its conclusion.

In *Escriba*, although employee Escriba had taken FMLA leave in the past, she expressly requested two weeks of paid *vacation* time off from work to care for her sick father in Guatemala. Despite that her leave request was FMLA-qualifying, the employer did not designate it as FMLA-protected, and later terminated Escriba's employment for violating its three-day no-show, no-call policy when she failed to return to work at the end of the two weeks. Escriba filed an FMLA interference claim, arguing that the employer was required to designate her time off as FMLA-protected, regardless of whether she declined it. The United States District Court for the Eastern District of California entered judgment in the employer's favor because evidence established that Escriba affirmatively declined to use FMLA leave and, thus, the employer did not interfere with her FMLA rights.

On appeal, the United States Court of Appeals for the Ninth Circuit affirmed. The Ninth Circuit Court observed that "the FMLA does not expressly state whether an employee may defer the exercise of FMLA rights under the statute[,]" *Escriba*, 743 F.3d at 1243, and that "nothing in the FMLA precludes an employee from deferring the exercise of his or her FMLA rights[,]"*id*. at 1247, and agreed that an employee may affirmatively decline to use FMLA leave. The *Escriba* Court reasoned:

> An employer's obligation to ascertain "whether FMLA leave is being sought" strongly suggests that there are circumstances in which an employee might seek time off but intend not to exercise his or her rights under the FMLA. And a compelling practical reason supports this conclusion. Holding that simply referencing an FMLA-qualifying reason triggers FMLA protections would place employers . . . in an untenable situation if the employee's stated desire is *not* to take FMLA leave. The employer could find itself open to liability for forcing FMLA leave

32

on the unwilling employee. *See, e.g.*, *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007) (noting that "[a]n involuntary[ ]leave claim," alleging that an "employer forces an employee to take FMLA leave," is "really a type of interference claim"). We thus conclude that an employee can affirmatively decline to use FMLA leave, even if the underlying reason for seeking the leave would have invoked FMLA protection. *See, e.g.*, *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 769 n. 3 (7th Cir. 2008) ("If an employee *does not wish to take FMLA leave* but continues to be absent from work, then the employee must have a reason for the absence that is acceptable under the employer's policies, otherwise termination is justified." ([E]mphasis added.))[.]

*Escriba*, 743 F.3d at 1244.

While assessing whether the evidence was sufficient to support the lower court's conclusion that Escriba declined to invoke her FMLA rights, the Ninth Circuit Court recognized that "the preservation of future FMLA leave is a compelling practical reason why an employee might wish to do so." *Id*. at 1247. The *Escriba* Court described:

Under [the employer's] policies, FMLA leave runs concurrently against the balance of both an employee's accrued vacation time and the employee's FMLA-protected leave until the paid vacation time is exhausted. When an employee's paid vacation time expires, that employee may remain on unpaid leave until a *total* of 12 weeks elapses. *See* 29 U.S.C. § 2612(a)(1) (limiting FMLA leave to 12 weeks per year). A different result occurs if an employee initially declines FMLA leave. By declining to take FMLA leave and subsequently requesting it at a later date, an employee can first take paid vacation, after which that employee would still have the full 12 weeks of FMLA leave remaining.

Under the facts of this case, if Escriba purposefully deferred asking for FMLA leave until after the expiration of her paid leave, she would have had two more weeks of protected leave than if she had initially requested family leave.

*Escriba*, 743 F.3d at 1245-46. Based on the Ninth Circuit Court's ruling in *Escriba*, other courts and agencies, as cited *infra*, have concluded that an employee may refuse or delay FMLA leave, even if the reason for his/her absence is FMLA-qualifying.

In *Gravel*, the employee expressly requested a flexible schedule in lieu of FMLA leave to bond with his foster child. Despite that the employer granted all of the employee's schedule adjustments related to his foster child, the employer discovered that the employee was falsifying his time records. After the employer notified the employee that he was being investigated, the employee applied for FMLA leave. The employer eventually terminated the employee's employment, and the employee filed an FMLA interference claim. The United States District Court for the Eastern District of Pennsylvania, relying on *Escriba*, entered judgment in the employer's favor, holding that the employee could and did decline FMLA job protection and, since he never invoked the FMLA, the employer did not violate his FMLA rights. *See also Skrynnikov v. Fed. Nat'l Mortg. Ass'n*, 226 F. Supp. 3d 26, 38 (D.D.C. 2017) (noting that the employee had properly indicated to employer that he was not electing to take FMLA leave for his rib injury and instead would use vacation time); *Amstutz v. Liberty Ctr. Bd. of Educ.*, 127 F. Supp. 3d 846, 854 (N.D. Ohio 2015) (once the employee declines FMLA protection to instead use paid sick leave, the employer cannot be liable for denying it or interfering with her FMLA rights); *Salem Cmty. Coll. & Salem Cmty. Coll. Fac. Ass'n*, 38 N.J. Pub. Emp. Rep. 42 (N.J. Pub. Emp. Rels. Comm'n 2011) (where an employee declines to use FMLA leave, the FMLA does not require an employer to force an employee to take it, or subject an employer to liability for not designating it as such).

However, the Board's reliance on *Escriba* and its progeny in the instant case is misplaced. First, although they may be considered persuasive authority with regard to interpreting federal statutes and regulations, "decisions of the federal courts

lower than the U[nited] S[tates] Supreme Court are not binding on Pennsylvania courts[.]" *W. Chester Area Sch. Dist. v. A.M.*, 164 A.3d 620, 630 (Pa. Cmwlth. 2017); *see also Wheeling-Pittsburgh Steel Corp. v. Dep't of Env't Prot.*, 979 A.2d 931 (Pa. Cmwlth. 2009). This is particularly so when other federal courts have reached the opposite conclusion. *See McCalla v. Avmed, Inc.* (S.D. Fla.,11-60007-CIV, filed Sept. 6, 2011), slip op. at 1, 2011 WL 3918538 (wherein the court determined that, where FMLA was to be taken concurrent with paid leave, the employee's FMLA leave to care for her ill son commenced the first day she was out of work for that reason);[48] *see also Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025 (8th Cir. 2006) (holding that commencement of FMLA is determined by when employee can no longer perform her job duties because of a serious health condition; substituting paid leave for unpaid leave does not entitle the employee to additional leave); *Strickland*, 239 F.3d at 1205-06 ("If employers could not require a sick employee to use accrued paid sick leave and FMLA leave concurrently when the employee's condition qualifies for both, then the employee could choose to use his paid leave benefit and his 12 weeks of FMLA leave sequentially.").[49] Therefore, the *Escriba* holding is not binding on this Court.

---

[48] Unreported federal court decisions may be cited by this Court for their persuasive value. *See Nagle v. TrueBlue, Inc.*, 148 A.3d 946 (Pa. Cmwlth. 2016). *McCalla* is cited solely for its persuasive value.

[49] In Employment Discrimination Law and Litigation, under the heading *Designation Notice*, the author recognized:

> There was a question whether an employer could delay the designation of leave, whether an employee could decline the designation of leave, or whether an employer could designate leave of more than 12 (or, if applicable, 26) weeks. According to a [March 14, 2019 DOL Wage and Hour Division (WHD)] [O]pinion [L]etter [FMLA2019-1-A (R.R. at 180a)], . . . the answer is a resounding no. For years, most employers understood that once they were on notice that a leave was FMLA-qualifying, they were required to designate that leave as FMLA leave. The Ninth Circuit [Court] injected uncertainty into this area in its opinion in *Escriba*. . . .

Second, when DOL amended the Regulations in 2008, Appendix E of Part 825 proffered the prototype form FMLA Designation Notice (Form WH-382), which declared: "**Leave covered under the [FMLA]** *must be* **designated as**

> [] DOL's [O]pinion [L]etter [FMLA2019-1-A] firmly rejects the *Escriba* decision, concluding that once an employee communicates a need to take leave for an FMLA-qualifying reason, neither the employee nor the employer may decline FMLA protection for that leave. In other words, employee preferences are irrelevant and employer compliance is mandatory. [] DOL further reiterated that this does not prevent employers from permitting or requiring that employees substitute paid leave to cover otherwise unpaid FMLA leave. FMLA leave will run concurrently with any paid leave, and neither employees nor employers can expand an employee's FMLA entitlement with paid time off benefits. For employers in the Ninth Circuit, however, the issue is still unsettled. [] DOL [O]pinion [L]etter [FMLA2019-1-A], however provides solid counsel and good reason to designate FMLA leave regardless of employee preference.

4 EMPLOYMENT DISCRIMINATION LAW & LITIGATION § 30.27.50 (Aug. 2022 update) (footnotes omitted).

In the Human Resources Guide, under the heading, "*What Escriba Means for Employers*," the author observed:

> *Escriba*'s statement that employees have the right to decline FMLA leave should not be taken out of context. <u>*Escriba* involved a leave to care for a family member; it did not involve a leave for the employee's own serious health condition.</u> Thus, *Escriba* did not address whether an employee could decline FMLA entitlement - thereby saving it for future use - while demanding a leave to accommodate the employee's own disability . . . .

> The *Escriba* decision should not be read to mean that an employee can decline FMLA leave while seeking leave as a reasonable accommodation for the employee's own disability. An employer faced with that situation could argue that it is entitled to designate and count the leave against the employee's FMLA or state leave law entitlement, because a leave to accommodate the employee's disability that did not also exhaust any available FMLA leave would *not* be a *reasonable* accommodation.

Robert J. Nobile, HUMAN RESOURCES GUIDE § 4:180 (Family Leave) (July 2022 update).

36

**FMLA**-**protected** and the employer must inform the employee of the amount of leave that will be counted against the employee's FMLA leave entitlement." FMLA, Final Rule, 73 Fed. Reg. 68126 (Nov. 17, 2008) (bold and italic emphasis added). DOL's Form WH-382 in effect in 2017, when Detective Pierluisse requested FMLA leave, contained the same language. *See* R.R. at 70a. Notably, DOL's current Form WH-382 (revised June 2020) clarifies:

> The employer is responsible in **all** circumstances for designating leave as FMLA-qualifying and giving notice to the employee. Once an eligible employee communicates a need to take leave for an FMLA-qualifying reason, **an employer may not delay designating such leave as FMLA leave**, **and neither the employee nor the employer may decline FMLA protection for that leave**.

*See* www.dol.gov/sites/dolgov/files/WHD/legacy/files/WH-382.pdf (last visited Oct. 6, 2022) (additional bold emphasis added).

Third, DOL's Wage and Hour Division (WHD) represented in a March 14, 2019 Opinion Letter FMLA2019-1-A:

> [A]n employer is prohibited from delaying the designation of FMLA-qualifying leave as FMLA leave. **Once an eligible employee communicates a need to take leave for an FMLA-qualifying reason**, **neither the employee nor the employer may decline FMLA protection for that leave**. *See* 29 C.F.R. § 825.220(d) ("Employees cannot waive, nor may employers induce employees to waive, their prospective rights under [the] FMLA."); *Strickland* . . . (noting that the employer may not "choose whether an employee's FMLA-qualifying absence" is protected or unprotected by the FMLA). Accordingly, **when an employer determines that leave is for an FMLA-qualifying reason**, **the qualifying leave is FMLA-protected and counts toward the employee's FMLA leave entitlement**. *See* 29 C.F.R. § 825.701(a) ("If leave qualifies for FMLA leave . . . the leave used counts against the employee's entitlement . . . ."); WHD Op[.] Letter FMLA2003-5 . . . at[ ]2 (Dec. 17, 2003)

37

("Failure to designate a portion of FMLA-qualifying leave as FMLA [leave] would not preempt FMLA protections . . . .").[FN]3 Once the employer has enough information to make this determination, the employer must, absent extenuating circumstances, provide notice of the designation within five business days. 29 C.F.R. § 825.300(d)(1). Accordingly, **the employer may not delay designating leave as FMLA-qualifying**, **even if the employee would prefer that the employer delay the designation**.

> [FN]3 WHD therefore disagrees with the Ninth Circuit's holding that an employee may use non-FMLA leave for an FMLA-qualifying reason and decline to use FMLA leave in order to preserve FMLA leave for future use. *See Escriba . . . .*

WHD Op. Letter FMLA2019-1-A at 2, R.R. at 180a (emphasis added);[50] *see also Dougherty v. Cable Network News*, 396 F. Supp. 3d 84 (D.D.C. 2019) (recognizing that DOL disagrees with *Escriba* and interprets the FMLA to disallow employees from using non-FMLA leave for FMLA-qualifying reasons).

In a September 10, 2019 Opinion Letter FMLA2019-3-A, the DOL reiterated:

> Once [an] employer has enough information to determine that an employee's leave request qualifies as FMLA leave, [the] employer must designate the leave as FMLA leave. As noted in WHD Opinion Letter FMLA2019-1-A, once an eligible employee communicates a need to take leave for an FMLA-qualifying reason, **an employer may not delay designating such leave as FMLA leave**, **and neither the employee nor the employer may decline FMLA protection for that leave**.

---

[50]  *See*  www.dol.gov/sites/dolgov/files/WHD/legacy/files/2019_03_14_1A_FMLA.pdf (last visited Oct. 6, 2022).

WHD Op. Letter FMLA2019-3-A at 3, R.R. at 185a (emphasis added).[51]  DOL's WHD Opinion Letters clearly emphasize the nondiscretionary nature of an employer's obligation to designate and begin counting FMLA-qualifying leave.

The Board declared in the Final Order that the aforementioned WHD Opinion Letters are not entitled to any weight because such opinions change with the administrations, and they fail to recognize Pennsylvania jurisprudence that protects bargaining rights for employees entitled to negotiated paid leave.[52]  *See* Final Order at 11.  As an example, the Board called attention to the fact that, in the

[51]  *See*  www.dol.gov/sites/dolgov/files/WHD/legacy/files/2019_09_10_3A_FMLA.pdf (last visited Oct. 6, 2022).

[52] The Dissent agrees with Hearing Examiner Marino and the Board that DOL's Opinion Letters are not entitled to any weight, and "find[s] judicial decisions more persuasive than an agency opinion letter." *Towamencin Twp.*, __ A.3d at __, dissenting slip op. at 10, However, despite that DOL Opinion Letters may not be binding, because they reflect DOL's "interpretation and intended application" of the law it is authorized to interpret, *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 639 (5th Cir. 2001), the courts afford them "substantial weight." *Flood v. New Hanover Cnty.*, 125 F.3d 249, 253 (4th Cir. 1997); *see also Schultz v. W.R. Hartin & Son, Inc.*, 428 F.2d 186, 191 (4th Cir. 1970); *Skidmore*, 323 U.S. at 140.  Giving DOL Opinion Letters substantial weight is particularly necessary where, as here, judicial decisions are inconsistent on a particular issue.

The Dissent cites *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), to conclude that "a court's interpretation of a statute overrides an agency's interpretation if the court decision holds the statute is unambiguous." *Towamencin Twp.*, __ A.3d at __, dissenting slip op. at 11.  As stated previously, the Majority agrees that this Court need only rely on DOL's Opinion Letters unless the subject provisions are ambiguous.  The law is well settled:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-43 (footnotes omitted).

March 14, 2019 Opinion Letter FMLA2019-1-A, DOL's position was the exact opposite of the October 27, 1994 WHD Opinion Letter FMLA-49 (1994 WHD Opinion Letter) ("[A]n employer may permit an employee to use accrued paid sick leave for FMLA[-]qualifying events and . . . to bank the 12-week FMLA entitlement leave for later use such as after the employee's sick leave has been exhausted."); *see also* Section 825.207(a) of DOL's Regulations ("[the] FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave." 29 C.F.R. § 825.207(a)).

> In *Chevron*, th[e United States Supreme] Court held that ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps, the Court explained, involves difficult policy choices that agencies are better equipped to make than courts. [*See Chevron*,] 467 U.S.[] at 865-[]66 . . . . If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation. *Id.*[] at 843-[]44, and n.11 . . . .

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Where, as here, Congress delegated authority to DOL to promulgate Regulations implementing the FMLA, *see* 29 U.S.C. § 2654, under *Chevron* (typically applied to more formal agency rule making) and *Skidmore* (typically applied to interpretive opinions), when an ambiguity exists, DOL's reasonable interpretations of the FMLA in its Regulations and the Opinion Letters are entitled to deference. *See Nat'l Cable*; *see also Chevron*; *Skidmore*.

40

Further, the *National Cable* Court concluded that inconsistency is not a basis on which to decline to consider an agency's interpretation if the agency adequately explains the reason for a policy change. *See Nat'l Cable*. The United States Supreme Court explained:

> "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis," *Chevron*, [467 U.S.] at 863-[]64 . . . , for example, in response to changed factual circumstances, or a change in administrations[.] That is no doubt why in *Chevron* itself, this Court deferred to an agency interpretation that was a recent reversal of agency policy. *See* [*Chevron*,] 467 U.S.[] at 857-[]58 . . . .

*Nat'l Cable*, 545 U.S. at 981 (citation omitted).

The Township responds that the 1994 WHD Opinion Letter lacks persuasive value, reasoning:

> [T]he 2019 Opinion Letters are in accord with the body of case law developed after 1994. . . . [T]he DOL issued revised [R]egulations in 2008, partly in response to cases such as *Ragsdale*, which invalidated [DOL R]egulations that impermissibly expanded the FMLA's provisions related to eligibility and leave entitlement. Fed[.] Reg[.], Vol. 74, No. 28 at 7877 (Feb[.] 11, 2008). *See also* Fed[.] Reg[.], Vol. 73, No. 222 (Nov. 17, 2008); *Erdman* [*v. Nationwide Ins. Co.*], 582 F.3d [500,] 507 [(3d Cir. 2009) (invalidating DOL Regulation that rendered an employee eligible for FMLA leave if the employer failed to provide eligibility notice, regardless of whether the employee fulfilled the minimum work hours prerequisite)]; Fed[.] Reg[.], Vol. 80, No. 37 at 9990 (Feb. 25, 2015) (noting that the 2008 changes were "based on [DOL's] experience administering the law, two [DOL] studies and reports on the FMLA issued in 1996 and 2001, several U[nited] S[tates] Supreme Court and lower court rulings on the FMLA, and a review of the comments received in response to [a] 2006 [Request for Information]"). As such, the [DOL R]egulations under which the DOL issued the 2019 Opinion Letters - which were in effect during the

events of this case - have evolved in significant respects and are not [the] same [R]egulations that the 1994 [WHD] Opinion Letter interpreted.

Moreover, the 1994 [WHD] Opinion Letter was previously called into question by [] DOL following the [United States] Supreme Court's decision in *Ragsdale*. *See* FMLA-49 [at 1] ("This letter is under review in light of issues raised by the U[nited] S[tates] Supreme Court in *Ragsdale . . .* and other judicial decisions. It may be superseded by FMLA2002-5-A."), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FMLA-49.pdf ([last visited Oct. 6, 2022]).

Township Br. at 35-36; *see also* Township Reply Br. at 15-16.

DOL's WHD Opinion Letters are consistent with the text of Section 825.300(d) of DOL's Regulations, and reasonably balance the FMLA's purpose "'to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers.' 29 U.S.C. § 2601(b)[.]" *Strickland*, 239 F.3d at 1206 n.8 (i.e., creating predictability, particularly for public employers, and minimizing an employee's time away from the job). *See Borough of Ellwood City v. Pa. Lab. Rels. Bd.*, 998 A.2d 589 (Pa. 2010) (As custodians of public funds, government employers must operate economically and effectively.); *Tredyffrin/Easttown Sch. Dist.*

Therefore, to the extent DOL's Regulations are considered ambiguous, DOL's FMLA forms and WHD Opinion Letters are entitled to deference. *See Christopher*; *Auer*; *Skidmore*. Here, this Court agrees with the Township that DOL's forms and the 2019 WHD Opinion Letters FMLA2019-1-A and FMLA2019-3-A represent DOL's position on the subject since at least 2002 and, in particular, at the time Detective Pierluisse requested FMLA leave. Thus, this Court holds that DOL's Regulations do not limit an employer's duty merely to employee FMLA eligibility notification but, rather, as DOL has interpreted, once a covered employer becomes aware that an eligible employee is taking FMLA-qualifying leave, the employer is

42

mandated to *designate and count* such leave as FMLA leave when it commences. Accordingly, notwithstanding the Board's and the Dissent's conclusions to the contrary, the Township lacked discretion to delay counting Detective Pierluisse's FMLA leave until after her second child was born.

**Employer Discretion to Substitute Accrued Paid Leave**

The FMLA established a minimum amount of unpaid leave for which an employee's job is protected, *see Ragsdale*, and "is not meant as a required addition to all employer-provided leave[.]" *Cox v. Autozone, Inc.*, 990 F. Supp. 1369, 1380 (M.D. Ala. 1998), *aff'd sub nom. McGregor v. Autozone, Inc.*, 180 F.3d 1305 (11th Cir. 1999). Rather, whether for FMLA leave for a serious health condition or for the birth or care of a newborn child, "an employer may require the employee[] to substitute [(run concurrently)] any of the accrued paid . . . leave . . . for any part of the 12-week period of such leave . . . ." 29 U.S.C. § 2612(d)(2)(A), (B); *see also* 29 C.F.R. § 825.207.

Section 825.207 of DOL's Regulations expounds, in relevant part:

(a) Generally, FMLA leave is unpaid leave. However, under the circumstances described in this section, [the] FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave. **The term substitute means that the paid leave provided by the employer**, **and accrued pursuant to established policies of the employer**, **will run concurrently with the unpaid FMLA leave**. Accordingly, the employee receives pay pursuant to the employer's applicable paid leave policy during the period of otherwise unpaid FMLA leave. An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employer's normal leave policy. When an employee chooses, or an employer requires, substitution of accrued paid leave, the

43

employer must inform the employee that the employee must satisfy any procedural requirements of the paid leave policy only in connection with the receipt of such payment. *See* [Section 825.300(c) of DOL's Regulations, 29 C.F.R.] § 825.300(c). If an employee does not comply with the additional requirements in an employer's paid leave policy, the employee is not entitled to substitute accrued paid leave, but the employee remains entitled to take unpaid FMLA leave. Employers may not discriminate against employees on FMLA leave in the administration of their paid leave policies.

(b) If neither the employee nor the employer elects to substitute paid leave for unpaid FMLA leave under the above conditions and circumstances, the employee will remain entitled to all the paid leave which is earned or accrued under the terms of the employer's plan.

(c) If an employee uses paid leave under circumstances which do not qualify as FMLA leave, the leave will not count against the employee's FMLA leave entitlement. For example, paid sick leave used for a medical condition which is not a serious health condition or serious injury or illness does not count against the employee's FMLA leave entitlement.

(d) Leave taken pursuant to a disability leave plan would be considered FMLA leave for a serious health condition and counted in the leave entitlement permitted under [the] FMLA if it meets the criteria set forth above in [Sections] 825.112 through 825.115 [of DOL's Regulations (relating to FMLA coverage)]. In such cases, the employer may designate the leave as FMLA leave and count the leave against the employee's FMLA leave entitlement. Because leave pursuant to a disability benefit plan is not unpaid, the provision for substitution of the employee's accrued paid leave is inapplicable, and neither the employee nor the employer may require the substitution of paid leave. However, employers and employees may agree, where state law permits, to have paid leave supplement the disability plan benefits, such as in the case where a plan

only provides replacement income for two-thirds of an employee's salary.[53]

29 C.F.R. § 825.207 (emphasis added);[54] *see also* DOL Fact Sheet #28;[55] *Int'l Ass'n of Firefighters Local #1749 v. City of Butler*, 32 PPER ¶ 32066 (PDO, Mar. 16, 2001) ("[T]his [DOL R]egulation is cast in discretionary rather than mandatory language.").

> This Court has further explained:
>
> [Under circumstances when an employer requires an employee to concurrently use accrued paid leave], the employee's time on paid [] leave would count toward the employee's FMLA 12-week allotment, thereby minimizing an employee's time away from the job. The employee would not be entitled to take her accrued sick leave *and* an additional 12 weeks.
>
> [Likewise, a]n employee may [] elect to take her paid sick leave "concurrent" with the FMLA leave . . . to receive [] full salary for the . . . FMLA leave.

*Tredyffrin/Easttown Sch. Dist.*, 56 A.3d at 25.

In *Strickland*, the United States Court of Appeals for the Eleventh Circuit concluded:

---

[53] Pursuant to Section 825.207(d) of DOL's Regulations, qualifying paid disability leave is counted against an employee's FMLA leave entitlement, but "substitution of paid leave does not apply when the employee is receiving paid disability leave," except to cover the difference between the disability plan payments and the employee's income. *Fam. & Med. Leave Handbook*, GUIDE TO THE FINAL FMLA REVISED REGULATIONS, SUPPLEMENTING DISABILITY LEAVE WITH PAID LEAVE, 2009 WL 105818.

[54] *See also* Forms WH-381 and WH-382.

[55] DOL Fact Sheet #28 states:

> Under certain conditions, employees or employers may choose to "**substitute**" (**run concurrently**) accrued paid leave (such as sick or vacation leave) to cover some or all of the FMLA leave. An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employer's normal leave policy.

R.R. at 102a (emphasis added).

45

The logical purpose underlying the substitution language in the FMLA and accompanying [R]egulations is to protect employers [that] offer paid sick leave benefits to their employees from having to provide both the statutory 12 weeks of leave required by the FMLA and the paid leave benefit separately. If employers could not require a sick employee to use accrued paid sick leave and FMLA leave concurrently when the employee's condition qualifies for both, then the employee could choose to use h[er] paid leave benefit and h[er] 12 weeks of FMLA leave sequentially. That would unduly and unfairly burden employers.[FN8] To balance the needs of employers and sick employees, Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave benefit offered by the employer.

> [FN8] The opening section of the FMLA makes clear that the purpose of the [FMLA] is "to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b).

*Strickland*, 239 F.3d at 1205-06.

Clearly, Congress intended, and DOL, this Court, federal courts, and even the Board, have interpreted that an employer has the discretion to require an employee to substitute paid leave for FMLA leave, thereby preventing an employee from stacking (i.e., first exhausting paid leave and then taking another 12 weeks off without pay). *See id.* Here, despite the Dissent's interpretation to the contrary, the Township was permitted, and did properly elect, to prohibit Detective Pierluisse from using contractual sick leave until her second child was born on January 10, 2018, and *then* beginning 12 weeks of FMLA leave for the birth and/or care of that child.

The Board nevertheless declared: "The Township's mandate in 2017 that Detective Pierluisse take her FMLA leave for her own serious medical condition

during pregnancy when she had other contractual paid leave available, had the effect of reducing her entitlement to [FMLA] leave following the birth of her second child." Final Order at 9. However, the Township afforded Detective Pierluisse the 12 weeks of FMLA-protected leave to which she was entitled. In fact, the Township granted Detective Pierluisse all the time off she requested (even beyond the minimum 12 weeks), without the risk of losing her job. Detective Pierluisse received 12 weeks of FMLA leave for the consecutive events of her serious health condition and birth and/or care of her second child (from November 27, 2017 to February 18, 2018), and she used 100 of her contractual sick days from November 27, 2017 until March 7, 2018, when her physician cleared her to return to work without limitation.[56] Thereafter, the Township permitted Detective Pierluisse to use her accrued PTO to work reduced hours for an additional four weeks. Therefore, as Congress intended, the FMLA protected her job, while the Township-paid sick leave, long-term disability insurance, and PTO provided her income (i.e., Detective Pierluisse received 100% of her wages for the first 90 days of the 12 weeks, 80% of her wages for 10 days, and PTO thereafter). Accordingly, the Township's election to have Detective Pierluisse's sick leave run concurrently with her FMLA leave did not reduce her entitlements under the CBA or the FMLA.

### 2. PLRA/Act 111

Section 5 of the PLRA mandates: "Employes shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection." 43 P.S.

---

[56] Notwithstanding Detective Pierluisse's post-Charge claim to the contrary, *see* R.R. at 22a-23a, there is no medical evidence that she was incapable of performing her job duties after March 7, 2018. *See* R.R. at 29a-31a.

§ 211.5.  Section 6(1) of the PLRA specifies that "[i]t shall be an unfair labor practice for an employer . . . (a) [t]o interfere with, restrain or coerce employes in the exercise of the rights guaranteed in th[e PLRA] . . . [and] (e) [t]o refuse to bargain collectively with the representatives of his employes[.]"  43 P.S. § 211.6(1).

> Section 1 of Act 111 more specifically provides:

> Policemen or firemen employed by a political subdivision of the Commonwealth . . . shall, through labor organizations . . . , have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits[.]

43 P.S. § 217.1.  Section 4 of Act 111 further authorizes the parties to seek binding arbitration when necessary.  43 P.S. § 217.4.

> Simply stated, Act 111 expressly and broadly requires that the parties must bargain over legal mandatory subjects of bargaining . . . before a party may unilaterally change such benefits.  This fundamental mandate of labor law is applicable regardless of whether the [CBA] expressly mentions such benefits; whether they have been incorporated into the [CBA] by reference; or whether the agreement is silent on that mandatory subject of bargaining.

*City of Erie v. Pa. Lab. Rels. Bd.*, 32 A.3d 625, 637 (Pa. 2011).

> This Court has explained:

> Under Act 111, a matter is deemed a mandatory subject of bargaining if it bears a rational relationship to the employees' duties. . . . Thus, any unilateral change by the [governing body] with respect to the officers' compensation would be an unfair labor practice in violation of Section[] 6(1)(a) and (e) of the PLRA.

*Pa. State Park Offs. Ass'n v. Pa. Lab. Rels. Bd.*, 854 A.2d 674, 680 (Pa. Cmwlth. 2004) (citation omitted).

Conversely,

> managerial prerogatives [a]re not deemed to be subject to the bargaining process. *Borough of Ellwood City . . . .* The rationale for this extra-statutory limitation on bargaining is that such topics are essential to a municipality in managing its employees and providing government services; even more so, certain managerial matters "strike at the heart of policy decisions that directly implicate the public welfare, and, thus, should be insulated from the give-and-take of collective bargaining." *Id*. at 600. Topics that fall into the category of inherent managerial prerogatives include "the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure, and selection and direction of personnel." *Id*. at 599 (citations omitted). As we stated in *City of Philadelphia v. [International Association of Firefighters], Local 22*, [999 A.2d 555, 569-70 (Pa. 2010),] "matters of managerial decision-making that are fundamental to public policy or to the public enterprise's direction and functioning do not fall within the scope of bargainable matters."

*City of Allentown v. Int'l Ass'n of Fire Fighters Local 302*, 157 A.3d 899, 906 (Pa. 2017) (footnote omitted). Moreover, "[w]here a managerial policy concern substantially outweighs any impact the issue will have on employees, the subject will be deemed a managerial prerogative and non-bargainable." *Schuylkill Haven Borough v. Schuylkill Haven Police Offs. Ass'n*, 914 A.2d 936, 941 (Pa. Cmwlth. 2006).

> [I]t is common sense that the salutary prohibition on bargaining over inherent managerial prerogatives stems in part from the nature of the government as an employer. . . . As we stated in [*Pennsylvania Labor Relations Board*] *v. State College Area Sch*[*ool*] *Dist*[*rict*], . . . 337 A.2d 262, 264 ([Pa.] 1975), "public employers are custodians of public funds and mandated to perform governmental functions as economically and effectively as possible.["]

*Borough of Ellwood City*, 998 A.2d at 599-600.

49

The Pennsylvania Supreme Court recognized:

[T]he divisions between [mandatory subjects of bargaining and managerial prerogatives] are not always clear. One may envision a Venn diagram with topics in the overlapping space that are terms and conditions of employment - which are subject to collective bargaining . . . - that also implicate matters of managerial responsibility - over which negotiation is not mandated[.] . . .

In these circumstances, our Court has created a framework by which to analyze and resolve whether such overlapping topics are subject to mandatory negotiation . . . , or whether they are insulated from collective bargaining as a managerial prerogative and not permitted to be part of such an award. *Borough of Ellwood City* (arising in challenge to ban on use of tobacco products in workplace); *City of Phila*[.] (arising in context of closure of fire companies). Specifically, given the history of Act 111, its terms, and the interpretation of that legislation by our Court, when considering topics that . . . may implicate both mandatory subjects of bargaining and managerial responsibility, a court should initially determine whether the topic is subject to the right of collective bargaining - i.e., whether it is rationally related to the terms and conditions of employment. If the topic does not speak to a mandatory subject of bargaining, the inquiry ends . . . . If the topic is germane to the terms and conditions of the workplace, the court should next ask whether the award also implicates a managerial responsibility. If not, [it] must be upheld as the topic is bargainable[.]

If, however, the topic is both a mandatory subject of bargaining *and* implicates managerial responsibilities, the final inquiry is "whether collective bargaining over the topic would *unduly infringe* upon the public employer's essential managerial responsibilities." *Borough of Ellwood City*, 998 A.2d at 600 (emphasis added). If bargaining over the subject would unduly infringe upon managerial responsibilities, the topic will be considered a managerial prerogative and non-bargainable . . . . If not, the topic is subject to mandatory collective bargaining . . . . *Id.*; *City of Phila*[.], 999 A.2d at 570-71.

50

*City of Allentown*, 157 A.3d at 907-08 (footnote omitted).

## Bargainability of Non-Discretionary FMLA Mandate

The Pennsylvania Supreme Court expressed that "Act 111 . . . requires that the parties must bargain over legal mandatory subjects of bargaining[.]" *City of Erie*, 32 A.3d at 637. This Court has also declared:

> [T]here must be excluded from the scope of [] Act [111] and necessarily outside of the definition of bargainable issues[] any subject which would require the government employer to perform any duty or to take some action which is specifically or impliedly prohibited by the statutory law governing its affairs. Such subjects are equally beyond the scope of an arbitration award.

*Cheltenham Twp. v. Cheltenham Twp. Police Dep't*, 312 A.2d 835, 838 (Pa. Cmwlth. 1973); *see also Commonwealth v. Pa. State Troopers Ass'n*, 23 A.3d 966 (Pa. 2011) (upholding Act 111 arbitration award that did not violate Section 5302(b)(2) of the State Employees' Retirement Code[57]); *City of Wash. v. Police Dep't of City of Wash.*, 259 A.2d 437 (Pa. 1969)[58] (Act 111 arbitration award requiring the city to pay hospitalization premiums for police officers' family members vacated because statute prohibited the city from paying such premiums for anyone not actually employed by the city); *Int'l Ass'n of Firefighters Local 1400, Chester City Firefighters v. City of Chester*, 991 A.2d 1001 (Pa. Cmwlth. 2010) (firefighters' salary increase could not exceed the Municipalities Financial Recovery Act[59] cap);

---

[57] 71 Pa.C.S. § 5302(b)(2) (union leave provisions).

[58] *City of Washington* was superseded by statute on other grounds. *See AFSCME, Dist. Council 33 v. City of Phila.*, 95 A.3d 966 (Pa. Cmwlth. 2014).

[59] Commonly referred to as Act 47, Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-11701.108; 11701.121-11701.123; 11701.141; 11701.201-11701.204; 11701.221-11701.224.1; 11701.241-11701.252; 11701.254-11701.257; 11701.261-11701.264;11701.281-11701.282; 11701.301-11701.303; 11701.431-1701.439; 11701.441-11701.447; 11701.601-11701.610; 11701.701-11701.712.

*Upper St. Clair Police Offs. Ass'n v. Pa. Lab. Rels. Bd.*, 689 A.2d 362 (Pa. Cmwlth. 1997); *Int'l Ass'n of Fire Fighters, Local 655, AFL-CIO v. City of Bradford*, 21 PPER ¶ 21168 (1990) (where the Third Class City Code[60] specified that firefighters' pensions shall be determined by a particular formula, the employer had no duty to bargain over a different pension formula).

The FMLA and DOL's Regulations require a covered employer, the Township herein, which elected to have Detective Pierluisse substitute accrued vacation and other paid leave for FMLA leave, *see* 29 U.S.C. § 2612(d)(2)(A), (B); *see also* 29 C.F.R. § 825.207, to immediately designate an eligible employee's leave as FMLA-qualifying, and begin calculating such leave at the time it commences. As stated above, Section 2652(b) of the FMLA declares: "The rights established for employees under th[e FMLA] . . . shall not be diminished by any [CBA] . . . ." 29 U.S.C. § 2652(b); *see also* 29 C.F.R. § 825.700(a). Therefore, the Township is expressly prohibited from collectively bargaining over whether and when to designate and calculate FMLA leave. If the Township was to bargain over such matters, it would specifically or impliedly violate the law. Accordingly, because *whether* and *when* an employer must designate and calculate FMLA leave is not discretionary, it is "necessarily outside of the definition of bargainable issues[.]" *Cheltenham Twp.*, 312 A.2d at 838.

**Bargainability of Discretionary FMLA Provision**

The FMLA and DOL's Regulations clearly afford the Township discretion to have police officers substitute their paid leave for FMLA leave. *See* 29 U.S.C. § 2612(d)(2); 29 C.F.R. § 825.207. The Board adopted Hearing Examiner Marino's conclusion that leave policies and discretionary FMLA provisions are

---

[60] 11 Pa.C.S. §§ 10101-14702.

mandatorily negotiable under Act 111 and, thus, "the Township was not at liberty to unilaterally implement a change in its policy to now mandate that Detective Pierluisse take her FMLA leave for her own serious health condition." Final Order at 9. The Township asserts that electing to have FMLA leave run concurrently with paid leave is a managerial prerogative, which the Township is free to change without bargaining, because "[r]equiring the Township to bargain over its statutory duty to designate leave or allowing a[] [police] officer to delay the designation of leave would unduly impact the Township's ability to discharge its essential responsibility to provide adequate police protection and services to its residents." Township Br. at 43.

The amount of time a public employee is off work may bear a rational relationship to the employee's duties (i.e., a mandatory subject of bargaining), and also affects the Township's ability to manage its employees and provide government services (i.e., a managerial prerogative). When a topic is arguably both a mandatory subject of bargaining and implicates a managerial prerogative, this Court must determine "whether collective bargaining over the topic would *unduly infringe* upon the public employer's essential managerial responsibilities." *City of Allentown*, 157 A.3d at 908 (quoting *Borough of Ellwood City*, 998 A.2d at 600 (emphasis added)).

This Court has previously held that the scope of a municipality's managerial prerogative extends to decisions "which might be considered 'essential for the proper and efficient functioning of a police force.'" *Int'l Ass'n of Fire Fighters, Local 669 v. City of Scranton*, 429 A.2d 779, 781 (Pa. Cmwlth. 1981) (quoting *City of Sharon v. Rose of Sharon Lodge No. 3*, 315 A.2d 355 (Pa. Cmwlth. 1973)). Specifically, "[i]t is well settled that a municipality decides the extent to which it will provide police coverage and services[,] and that such decisions fall within the municipality's managerial prerogative." *Town of McCandless v.*

53

*McCandless Police Offs. Ass'n*, 952 A.2d 1193, 1197 (Pa. Cmwlth. 2008); *see also*

*City of Jeannette v. Pa. Lab. Rels. Bd.*, 890 A.2d 1154 (Pa. Cmwlth. 2006).

This Court has explained:

The bottom line . . . is whether the court will permit the members of fire and police forces to decide how much of the municipal budget will be spent in the areas of fire and police protection . . . [, or] . . . give the public employees' union the right to have a major decision-making impact on government spending, budgeting, the level of police and fire protection that the municipality must provide, and even taxation, because salaries for [] additional employees must come from public funds.  [If it does so] . . . , the [C]ourt [will] effectively put [unions] on an equal footing with their employer on a major policy-making question. These people are, after all, employees, not employers.

. . . .   [T]he municipality [has] the ultimate decision concerning what level of [police and/or] fire protection it wishes, or can afford, to provide to the citizens.  If it finds that . . . situations cause an imbalance in certain areas of the force, it retains the authority to decide whether to hire more employees, close stations, revamp the force, or take some other managerial action.  Since the method of resolving the imbalance may have far-reaching political and economic implications, especially if taxes must be raised, it should remain within the purview of those who were elected and/or appointed to make such decisions.

*City of Scranton*, 429 A.2d at 781.  Accordingly, this Court has ruled that it is within

"the scope of a municipality's managerial decision-making [to] determin[e] [] the

total number of [police officers] it deems necessary for the level of [] protection it

wishes to afford to its citizens." *Id.* at 781-82.

Notably, regarding the FMLA, as the Township argues, *see* Township

Br. at 7, 43-44, Hearing Examiner Marino has previously concluded:

[I]n balancing the interests of both the [municipality] and [the officer] (as well as the unit as a whole) as required by Section 2601 of the FMLA and [*Borough of*] *Ellwood City*, it is clear that the [municipality] has a greater

54

interest. The [municipality] is a public employer operating a police department. The [municipality] has a managerial interest in determining the appropriate level of police service and protection within the community given its operating budget. Police services are at the heart of a municipality's function to provide for the health, safety and welfare of the community. Because its core managerial function would be unduly infringed upon (if the Board required the [municipality] to bargain the decision of when an employe's FMLA[-]qualifying leave could or should be taken), this matter constitutes a managerial prerogative.

. . . . The [municipality] cannot compromise its duty to fill [the officer's] position and provide optimal, budgeted police coverage as soon as possible. . . . The [municipality], on behalf of its citizens, has a real interest in knowing when it can replenish its police complement with a new officer or welcome [the officer] back into the police department as a capable officer. Either way, the [municipality] has a legitimate interest in limiting the amount of time it maintains a police vacancy when it needs to fill the position with a capable and healthy officer.

The core managerial functions of a public employer to provide adequate police protection requires the conclusion that the [municipality] had a managerial prerogative to unilaterally place [the officer] on FMLA leave as soon as it was determined that h[er] leave resulted from a condition that qualified h[er] for such leave. This managerial decision protected the [municipality's] ability to plan either for [the officer's] return or h[er] replacement such that the previous and expected level of police services could again be provided to the citizens of the [municipality].

*New Cumberland Police Emps. v. New Cumberland Borough*, 43 PPER ¶ 28 (PDO, Aug. 2, 2011).[61]

---

[61] *City of Butler* is a proposed decision by a hearing examiner. "The Board is not bound by proposed decisions[.]" *Pa. Emergency Mgmt. Agency v. Pa. Lab. Rels. Bd.*, 768 A.2d 1201, 1206 (Pa. Cmwlth. 2001). However, Section 95.98(b) of the Board's Regulations declares: "When no exceptions are filed to a proposed decision, it will become final upon the expiration of 20-calendar days from the date of issuance." 34 Pa. Code § 95.98(b). Further, Section 95.98(d) of

In reaching its conclusion to the contrary, the Board relied on *City of Butler* and *Verizon North, Inc. & International Brotherhood of Electrical Workers, Local 1637*, 352 NLRB 1022 (2008). In *City of Butler*, a city firefighter suffered a work-related injury for which he received benefits under what is commonly referred to as the Heart and Lung Act[62] (HLA) while he was off from work. Based on its view that it was a managerial prerogative over which it did not need to bargain, the city began calculating the firefighter's FMLA leave entitlement from when his HLA leave began, thereby running his FMLA benefits concurrently with his HLA benefits. The firefighter's union filed an unfair labor practice charge, arguing that the city violated its bargaining obligation by mandating that the firefighter use FMLA leave, despite the fact that he was receiving paid time off pursuant to the HLA. Without supporting analysis, the hearing examiner simply declared that leave policies and discretionary FMLA provisions are mandatorily negotiable under Act 111, and concluded that, since the city's FMLA leave substitution election is mandatorily negotiable, the city was required to bargain with the union before implementing such a policy.

In applying the 2001 *City of Butler* decision to the case at bar, Hearing Examiner Marino and the Board disregarded the Pennsylvania Supreme Court's mandate to analyze "whether collective bargaining over the topic would *unduly infringe* upon the public employer's essential managerial responsibilities." *Borough of Ellwood City*, 998 A.2d at 600 (emphasis added). They also directly contradicted the more recent and factually similar *New Cumberland* decision, wherein Hearing

the Board's Regulations authorizes the Board "on its own motion, [to] decide to review the proposed decision within 20-calendar days following the date of issuance of the decision." 34 Pa. Code § 95.98(d). In light of Section 95.98(b), (d) of the Board's Regulations, this Court has concluded that, "hearing examiner decisions have some weight when the Board has left them in effect[.]" *Fraternal Ord. of Police, Star Lodge No. 20 v. Pa. Lab. Rels. Bd.*, 522 A.2d 697, 700 (Pa. Cmwlth. 1987), *aff'd*, 560 A.2d 145 (Pa. 1989).

[62] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

Examiner Marino did undertake a *Borough of Ellwood City* analysis. Although the Board is not bound by a hearing examiner's proposed decisions, this Court has held that "the Board should not disregard consistent trends in the work of its hearing examiners." *Pa. Emergency Mgmt. Agency v. Pa. Lab. Rels. Bd.*, 768 A.2d 1201, 1206 (Pa. Cmwlth. 2001).

The Board also based its determination that the Township's leave substitution policy was a mandatory subject of bargaining on *Verizon North, Inc.*, wherein an employer changed its policy from one that prevented its employees from taking paid leave benefits before invoking unpaid FMLA leave, to requiring the concurrent use of both contractual paid leave and unpaid FMLA leave. Therein, Verizon argued that DOL's Regulations allowed it to preclude employees from stacking their FMLA unpaid leave benefits on top of their other paid leave entitlements. The National Labor Relations Board (NLRB) disagreed, declaring that an employer may not unilaterally designate FMLA commencement to run concurrently with other available paid leave benefits without bargaining. However, as the Township correctly notes, *Verizon North, Inc.* has since been abrogated by the United States Supreme Court's decision in *New Process Steel, L.P. v. National Labor Relations Board*, 560 U.S. 674 (2010),[63] and the NLRB has not since reinstated or adopted its analysis. Therefore, as the Township argues, *Verizon North, Inc.* "cannot serve as even persuasive authority in this case." Township Br. at 45. This Court agrees.

In addition, the Board attempts to carve out an exception for serious health conditions preceding the birth of a child. *See* Board Br. at 18. The Board

---

[63] In *Verizon North, Inc.*, although only the NLRB chairman and one member participated, they constituted a quorum. "In *New Process Steel*[*, L.P.*], the United States Supreme Court held that, in cases such as *Verizon North*[*, Inc.*], where the NLRB only had [those] two active members, the agency could not meet the statutory requirement of a three-member quorum, and therefore, it lacked the authority to exercise its powers." Township Br. at 44; *see New Process Steel, L.P.*

claims that, "*in the case of an employe's pregnancy and childbirth*, the Township is required to collectively bargain over its concurrent application of the 12[ ]weeks of FMLA [leave] to the unlimited sick and disability benefits available for the employe's use *during her pregnancy* under the CBA." Board Br. at 15 (emphasis added); *see also* Final Order at 9. The Board declares: "[T]he unique circumstances of this case militates in favor of collective bargaining where under the CBA . . . a serious condition arising out of pregnancy and the birth/care of a newborn were deemed separate and distinct events . . . for purposes of [the] employe's contractual sick leave and the FMLA." Board Br. at 17 n.7.

In its Reply Brief, the Township rejoins that "[t]he Board's attempt to narrow the scope of its decision should be rejected as contrary to the provisions of the FMLA." Township Reply Br. at 9. The Township specifically argues: First, the Board's Final Order did not limit its decision to such circumstances but, rather, ordered the Township to "[i]mmediately permit officers to choose when they would take FMLA leave, and immediately cease requiring officers to commence FMLA leave concurrently with paid leave benefits[.]" Final Order at 13. Second, the Board's position would result in pregnant female employees being treated differently than male employees, which is contrary to the FMLA's purpose of making leave available on a gender-neutral basis,[64] and expressly contradicts Section 825.112(b) of DOL's Regulations, which declares that "[t]he right to take leave under [the] FMLA applies equally to male and female employees." 29 C.F.R. § 825.112(b). Third, the Board's concession that the Township has the managerial right to count

---

[64] The FMLA's purposes include, *inter alia*, "to . . . minimize[] the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis;" and "to promote the goal of equal employment opportunity for women and men[.]" 29 U.S.C. § 2601(b)(4)-(5).

58

FMLA leave concurrently with paid leave in some situations, but not others, defies logic.

This Court agrees that police officer staffing "strike[s] at the heart of policy decisions that directly implicate the public welfare," *Borough of Ellwood City*, 998 A.2d at 600, and "substantially outweighs any impact the issue will have on employees[']" working conditions, *Schuylkill Haven Borough*, 914 A.2d at 941, "and, thus, should be insulated from the give-and-take of collective bargaining." *Borough of Ellwood City*, 998 A.2d at 600. Accordingly, this Court holds that the Township's election to require its police officers to substitute accrued paid leave for FMLA leave is a managerial prerogative that is not subject to collective bargaining. Further, considering that, among the FMLA's purposes are "minimiz[ing] the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons . . . on a gender-neutral basis[,]" and "promot[ing] the goal of equal employment opportunity for women and men," 29 U.S.C. § 2601(b)(4)-(5), no distinction shall be made in the case of an employee's pregnancy and childbirth.

### 3. The Charge

In order to prevail on the Charge, the Union had to prove that the Township **had a policy** regarding when FMLA leave for the birth and care of a newborn child commenced after FMLA leave for a prenatal or pregnancy-related serious health condition, that it **unilaterally changed such policy**, and that the policy was a **mandatory subject of bargaining**. *See Lancaster Cnty.*

At the time of Detective Pierluisse's second FMLA leave, **the Township did not have an FMLA or maternity leave policy governing its police officers**. Rather, when faced for the *first and only* time with an FMLA-qualifying event in which an *eligible* police officer who sought FMLA leave for the birth and/or

care of a newborn child, but who first used FMLA-qualifying leave for her own prenatal- or pregnancy-related serious health condition that rendered her incapable of performing the essential functions of her job,[65] the Township followed federal law.

In accordance with the FMLA and DOL's Regulations, the Township timely notified Detective Pierluisse that her requested leave was FMLA-qualifying,

_____

[65] The Township's handling of Detective Pierluisse's leave for the birth of her first child in 2016 did not create a past practice that bound the parties relative to the birth of her second child. Although "[e]vidence of past practice can be used . . . to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the [CBA][,]" *Pa. State Corr. Offs. Ass'n v. Dep't of Corr., State Corr. Inst. at Benner*, 244 A.3d 85, 95 (Pa. Cmwlth. 2020) (quoting *Penns Manor Area Sch. Dist. v. Penns Manor Area Educ. Support Pers. Ass'n*, 953 A.2d 614, 618 (Pa. Cmwlth. 2008) (emphasis omitted)), the past practice "must be shown to be the accepted course of conduct characteristically repeated in response to the given set of underlying circumstances." *Pa. State Corr. Offs. Ass'n*, 244 A.3d at 95 (quoting *Allegheny Cnty. v. Allegheny Cnty. Prison Emps. Indep. Union*, 381 A.2d 849, 852 n.12 (Pa. 1977)). The Pennsylvania Supreme Court explained that "[a] custom or practice is not something which arises simply because a given course of conduct has been pursued by [m]anagement or the employees on one or more occasions. A custom or a practice is a usage evolved by men as a normal reaction to a recurring type situation." *Allegheny Cnty.*, 381 A.2d at 853 n.12. "Recurring" is defined in Merriam-Webster's online dictionary as "occurring repeatedly : happening or appearing multiple times[.]" www.merriam-webster.com/dictionary/recurring (last visited Oct. 6, 2022); *see also Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018). Notably, Hearing Examiner Marino has previously held that "[o]ne occurrence . . . does not constitute a 'normal reaction to a recurring type of situation' and therefore the 'accepted course of conduct characteristically repeated,' as required by the Supreme Court." *New Cumberland Police Emps.*, 43 PPER ¶ 28 (quoting *Allegheny Cnty.*, 381 A.2d at 852 n.12 (emphasis omitted)); *see also Whitehall Twp.*, 18 PPER ¶ 18024 (1986) (a single prior mistaken/inadvertent action does not establish past practice). This Court agrees.

Here, Detective Pierluisse was not an eligible employee when she requested leave related to the birth of her first child in 2016, since she had not worked the prerequisite 1,250 hours. Because the FMLA did not apply, the Township was prohibited, as a matter of federal law, from designating and counting Detective Pierluisse's 2016 leave as FMLA leave. Under the circumstances, the Township's single instance of temporarily and mistakenly characterizing Detective Pierluisse's 2016 leave as FMLA leave, when it was not, did not create a policy that required the Township to calculate Detective Pierluisse's FMLA leave for a serious health condition and/or birth and care of her second child from the date that child was born. Notably, before the Township discovered that Detective Pierluisse was ineligible for FMLA leave in 2016, it notified her (just like it did on December 5, 2017), that her "FMLA leave will run concurrently with the receipt of any disability benefits, as permitted by the FMLA[.]" R.R. at 67a.

that the Township would designate and count such leave as FMLA leave as of when such leave began, and that the Township expected her to take vacation and other paid leave concurrently with the FMLA leave. *See* 29 U.S.C. § 2612(d)(2); *see also* 29 C.F.R. §§ 825.207, 825.300. As directed by the FMLA and DOL's Regulations, the Township calculated Detective Pierluisse's 12 weeks of FMLA leave related to the pregnancy and birth of her second child as of November 27, 2017, the date she became unable to perform her job duties. *See* 29 C.F.R. § 825.300(d)(1). The FMLA and DOL's Regulations authorized Detective Pierluisse to receive "a *total* of 12 workweeks of leave during any 12-month period *for any one, or more*, of the [qualifying] reasons[.]" 29 C.F.R. § 825.200(a) (emphasis added). Detective Pierluisse used approximately 6 of her allotted 12 FMLA leave weeks for her prenatal- and pregnancy-related serious health conditions before the birth of her second child, and she used the remaining 6 weeks for the birth and care of her second child. Once those 12 weeks were exhausted, Detective Pierluisse was no longer eligible for the FMLA's protection.[66] *See id.*; *see also* 29 U.S.C. § 2612; WHD Op. Letter, FMLA 2005-3-A. The only discretion the Township could and did exercise was its election to have Detective Pierluisse substitute accrued vacation and other paid leave for FMLA leave, *see* 29 U.S.C. § 2612(d)(2); *see also* 29 C.F.R. § 825.207, which is a managerial prerogative and not subject to bargaining.[67] *See*

_____

[66] "[S]ome states, such as California, have separate pregnancy/bonding leaves with separate criteria and separate entitlements." *Fam. & Med. Leave Handbook* ¶ 130, FREQUENTLY ASKED LEAVE QUESTIONS, 2003 WL 25316974. Pennsylvania is not currently among them.

[67] Although, as previously discussed herein, there was no past practice upon which the Board could rely in this case, a past practice cannot abridge a managerial prerogative. *See Town of McCandless*; *see also S. Park Twp. Police Ass'n v. Pa. Lab. Rels. Bd.*, 789 A.2d 874 (Pa. Cmwlth. 2002). "[A] past practice is not binding on a public employer unless that practice is subject to mandatory bargaining under a [CBA]." *State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Facs.*, 834 A.2d 1235, 1242 (Pa. Cmwlth. 2003).

> To conclude that an employer must bargain collectively with a
> bargaining unit over something that may constitute a past practice
> but is not a mandatory subject of collective bargaining would bind

*Town of McCandless*; *see also City of Jeannette*; *City of Scranton*; *New Cumberland Police Emps*. Accordingly, when the Township designated and calculated Detective Pierluisse's FMLA leave beginning on the day she became incapacitated by a serious health condition related to her second pregnancy, the Township did not implement a new, discretionary policy that was a mandatory subject of bargaining.

Notwithstanding, the Board in this case concluded that "the Township was not at liberty to unilaterally implement a change in its policy to now mandate that Detective Pierluisse take her FMLA leave for her own serious medical condition." Final Order at 9. However, because the Board was not authorized to interpret the FMLA, the Board's interpretation of the FMLA is not entitled to deference.[68] *See* 29 C.F.R. § 825.701(a); *see also Marcellus Shale Coal.*; *Nw. Youth Servs., Inc.*; *Twp. of Bordentown N.J.*; *MCI Telecomm. Corp*.

## Conclusion

Based on this Court's review of the applicable law and relevant record evidence, it is clear that the Union failed to meet its burden of proving that the Township unilaterally changed a policy that was a mandatory subject of bargaining.

---

an employer to virtually all practices including matters of managerial prerogative extant at the time of negotiating a [CBA] and arbitrarily expand the parameters of []Act 111.

*S. Park Twp. Police Ass'n*, 789 A.2d at 879-80.

[68] This Court agrees with the Township, *see* Township Reply Br. at 9-11, that, although the Board claims that its decision is limited to concurrent use of paid sick leave benefits and FMLA leave when an employee experiences a serious medical condition due to pregnancy prior to the birth of a child, *see* Board Br. at 18, the Board did not similarly limit its remedy to such situations. *See* Final Order at 13. Moreover, by creating a distinction between FMLA leave for serious health conditions related to pregnancy and those that are not, the Board may allow for male and female employees to be burdened differently, which the FMLA was intended to prevent. *See* 29 U.S.C. § 2601(b)(4)-(5); 29 C.F.R. § 825.112(b). Finally, the Board's statement that an employer has the right to designate FMLA leave to run concurrently with sick leave benefits in situations other than pregnancy and childbirth suggests that the employer has the right to make such determinations in some cases but not others, thereby suggesting a managerial prerogative.

In reaching a decision to the contrary, the Board misapplied the FMLA and erroneously concluded that the Township violated its statutory duty to bargain under Section 6(1)(a) and (e) of the PLRA as read *in pari materia* with Act 111. Accordingly, this Court reverses the Board's Final Order.

 

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Towamencin Township,              :
          Petitioner        :
                        :
                        :
          v.              :
                        :
Pennsylvania Labor Relations Board,   :  No. 789 C.D. 2020
          Respondent        :

## O R D E R

AND NOW, this 7th day of October, 2022, the Pennsylvania Labor Relations Board's July 24, 2020 Final Order is reversed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Towamencin Township,            :
                  Petitioner    :
                              :
         v.                 :
                              :
Pennsylvania Labor Relations Board,  :   No. 789 C.D. 2020
                  Respondent  :   Argued: June 10, 2021

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE FIZZANO CANNON         FILED: October 7, 2022

      I respectfully dissent from the majority's reversal of the Final Order of the Pennsylvania Labor Relations Board (Board). For the reasons explained below, I would affirm.

**I. Scope of the Issues Raised in the Charge**

      As the majority correctly observes, the Board's brief asserted it was "not saying that [Towamencin Township (Township)] cannot require an employe[e] to run [Family and Medical Leave Act of 1993[1] (FMLA)] leave entitlement concurrent[ly] with paid sick leave benefits when experiencing a serious medical

---

[1] 29 U.S.C. §§ 2601, 2611-2620, 2631-2636 & 2651-2654.

condition, other than a pregnancy prior to the birth of a child."[2] Accordingly, the majority reasons that "the Union's Charge [of Unfair Labor Practices (Charge)] and the Board's argument . . . are expressly limited to . . . the Township's calculation of FMLA leave for an employee who experiences a prenatal- or pregnancy-related serious health condition and also seeks FMLA leave for the birth and/or care for a newborn child . . . ." *Towamencin Twp. v. Pa. Lab. Rels. Bd.*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 789 C.D. 2020, filed Oct. 7, 2022), slip op. (Maj. Op.) at 16 n.23. On that basis, the majority concludes that, in considering the Township's policy and past practice regarding FMLA leave, "the Board erred by relying on the Township's actions relative to leave taken by a male police officer for knee and hip surgery." *Id.* (citing Reproduced Record (R.R.) at 44a-45a (six-month leave for knee surgery in 2014 and three-month leave for hip surgery in 2016, with no concurrent running of FMLA leave in either instance)).

The applicable regulation requires that a charge filed with the Board must include a "clear and concise statement of the facts constituting the alleged unfair practice, including the names of the individuals involved in the alleged unfair practice, the time, place of occurrence and nature of each particular act alleged, and reference to the specific provisions of the act alleged to have been violated." 34 Pa. Code § 95.31. Here, the Charge alleged, in pertinent part:

---

[2] I note that here, Detective Jamie Pierluisse's physical disability was related to her pregnancy and the caesarian delivery of her second child, and it lasted for several weeks *after* the birth, Proposed Decision & Order at 6, as had also been the case after the birth of her first child. However, the bargaining unit, consisting of the Officers of the Towamencin Township Police Department (Union), is not challenging the Township's right to commence FMLA parental leave as of the date of birth, in accordance with the Township's stated policy at the time Pierluisse's first child was born, even though the FMLA parental leave ran concurrently with available sick leave for the first few weeks.

12. Policy concerning implementation of FMLA leave is a mandatory subject of bargaining.

13. [The Township's] change in the commencement of FMLA for the birth of a child on December 5, 2017, was a unilateral change in working conditions without bargaining with the [Union].

14. In unilaterally changing the FMLA policy on December 5, 2017, the [] Township violated an established past practice regarding the implementation of FMLA leave with regard to childbirth coverage.

R.R. at 5a. At the time the Township changed its policy[3] on December 5, 2017, Pierluisse was off work at her doctor's recommendation. Bd.'s Final Order at 3. In other words, she was off because of pregnancy-related sickness or disability, *not* for parental leave following the birth of her child, which did not occur until January 10, 2018. *See id.* Therefore, the Township's placement of Pierluisse on FMLA leave as of December 5, 2017 necessarily constituted a change to the *sick* leave policy. Thus, the effects of the Township's policy change on sick leave and parental leave under the FMLA were not merely related, but inextricably intertwined.[4] Therefore,

_____

[3] As found by the hearing examiner, the Township's witness "admitted that he changed the Township's FMLA policy with respect to designating the commencement of leave as soon as an officer is out of work instead of permitting the officer to defer FMLA leave and utilize short-term disability at full pay under the [collective bargaining agreement (CBA)]." Proposed Decision & Order at 16; *see also* Bd.'s Final Order at 13 (making absolute and final the hearing examiner's Proposed Decision & Order).

[4] By contrast, in *Teamsters Local Union 77, Turnpike Commission and Public Service Employees v. Pennsylvania Labor Relations Board*, 492 A.2d 782, 784-85 (Pa. Cmwlth. 1985), an unfair practice charge alleged improper electioneering outside a polling area. This Court upheld the Board's refusal to consider *unrelated* allegations of maintaining an illegal check-off list to determine who had voted and illegally promising voting employees a party after the election. *Id.* at 784-85. Likewise, in *Teamsters Local Union No. 384 v. Kennett Consolidated School District*, 37 PPER ¶ 89 (2006), cited by the majority, the Board noted "a clear distinction between a claim of unfair practices for discriminatorily subcontracting to avoid a union organizing campaign," which was alleged in the union's charge, and an *unrelated* "claim of unlawful surveillance and interrogation of employe[e]s," which was not within the scope of the union's charge. *Id.*

the Township's past practice of allowing police officers to use paid sick leave without concurrently exhausting their FMLA leave was relevant in adjudicating the Township's treatment of Pierluisse's leave. For that reason, I would hold that the issue of the Township's unilateral change to its sick leave policy was fairly subsumed in the Union's Charge regarding the Township's application of the FMLA to Pierluisse. Accordingly, I differ from the majority view and would hold that the Union's Charge in this case was sufficient to allow consideration of past practice regarding sick leave other than pregnancy.

In this regard, I also disagree with the majority's suggestion that the hearing examiner and the Board improperly broadened the issues raised in the Charge. The hearing officer described the issue raised by the Charge as

> whether the Township violated Section 6(1)(a) and (e) of the [Pennsylvania Labor Relations Act (PLRA)[5]] as read with Act 111[6] when it designated the commencement of FMLA leave for . . . Pierluisse when she left work for an FMLA[-]qualifying event resulting from her incapacity to perform police officer duties due to her second pregnancy and when she desired to use negotiated paid leave benefits instead of FMLA[-]designated leave, as the Township permitted during her first pregnancy.

Proposed Decision & Order at 8. The Board described the issue as

> whether an employer is required to collectively bargain over the discretionary aspects of the FMLA before implementing a leave policy prohibiting the "stacking" of leave benefits where two FMLA-qualifying absences occur back-to-back, such as here, where the employe[e] suffered her own serious health condition which was then followed by the necessity to care for a newborn child.

---

[5] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a), (e).

[6] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

Bd.'s Final Order at 11. In my view, the descriptions of the Charge provided by both the hearing examiner and the Board did not expand the scope of the Charge, but rather, simply described the factual context of the issues raised and fairly subsumed in the Charge.

Moreover, I discern no basis upon which the Township could treat sick leave related to pregnancy any differently from its treatment of sick leave generally. As the majority acknowledges, Section 2612(a)(2) of the FMLA makes clear that the right to parental leave related to the birth of child commences *when the child is born*. *See* 29 U.S.C. § 2612(a)(2) (providing that "entitlement to leave . . . for a birth . . . of a son or daughter shall expire at the end of the 12-month period *beginning on the date of such birth . . .*"). Before that, therefore, a prenatal and pregnancy-related health issue that renders an employee incapable of performing the functions of the job would be subject to *sick leave* that commences when the incapacity begins, *not parental leave*. Thus, in my view, the fundamental issue in this case is not pregnancy sick leave specifically, but a unilateral change in policy or past practice that forces an employee to use FMLA leave concurrently with *any* paid sick leave – although, in this instance, that unilateral change in policy or past practice also had the effect of reducing the amount of FMLA leave remaining to be used as parental leave after the birth of a child. *See* Bd.'s Final Order at 8 n.8 (explaining that "[b]y requiring . . . Pierluisse to use FMLA leave during her own illness related to the pregnancy (for which she was contractually entitled to unlimited leave), the Township reduced . . . her ability to take needed FMLA leave to care for family or her [newborn] child").

A critical aspect of the CBA here is its provision for *unlimited* paid sick leave for the Township's police officers. *See* Proposed Decision & Order at 8 n.5. In light of this provision, it makes sense that the Township never previously required

CFC-5

police officers to use FMLA leave concurrently with paid sick leave. There was no point in doing so, because the paid sick leave was unlimited anyway. It was only when the Township was faced with a second request for FMLA *parental* leave by Pierluisse that it decided to minimize that leave by requiring her to use FMLA leave concurrently with her paid *sick* leave as soon as her doctor recommended that she stop working in advance of her second child's birth. *See* Bd.'s Final Order at 4 (explaining that the Township chose to designate Pierluisse's FMLA leave to start the first day she was off work, "due to manpower shortages in the department").

Perhaps there had not been a previous instance where a police officer used extensive sick leave and then used FMLA leave in the same year for a purpose other than sickness; it is possible that the Township had not previously had occasion to consider how to handle such a situation. Nonetheless, the fact remains that until Pierluisse's second pregnancy, the Township had always allowed its police officers to use their unlimited paid sick leave without concurrently running out their available FMLA leave. Bd.'s Final Order at 12; *see* R.R. at 44a-45a (six-month leave for knee surgery in 2014 and three-month leave for hip surgery in 2016, with no concurrent running of FMLA leave in either instance). As a consequence, FMLA leave had always remained available in the event an FMLA-eligible reason other than sick leave arose. The Township's unilateral decision to start requiring FMLA leave to run concurrently with sick leave was not merely a change in its parental leave policy as previously applied to Pierluisse's first pregnancy;[7] it was a clear change to the

_____

[7] The hearing examiner found that there was an established past practice, although involving only a single past instance, of allowing use of FMLA parental leave beginning upon the birth of a child rather than upon the beginning of sick leave for pregnancy. Proposed Decision & Order at 16. The Board found the record provided substantial evidence in support of the hearing examiner's findings of fact. Bd.'s Final Order at 11-12  Moreover, the Board observed that the Township expressly stated in its letter to Pierluisse regarding her first leave that it was handling

Township's established past practice regarding FMLA and *sick* leave. In other words, the past practice at issue was not merely the Township's reaction to the only previous instance of a request for pregnancy sick leave and parental leave following the use of that sick leave, but more fundamentally, the Township's past practice of allowing police officers to use their unlimited paid sick leave as needed, without taking FMLA leave concurrently.[8]

## II. Construction and Application of the FMLA

As discussed further below, discretionary aspects of the FMLA are subject to collective bargaining. Thus, a critical issue here is whether the Township's designation of Pierluisse's FMLA leave beginning as of December 5, 2017 was discretionary or mandatory. The majority accepted the Township's argument that the designation was mandatory. I respectfully disagree.[9]

As the majority correctly observes, Section 825.300 of the United States Department of Labor (DOL) regulations implementing the FMLA provides that once an employer learns that an employee's leave request is for an FMLA-qualifying reason,

---

the leave request according to its *existing* FMLA policy. Bd.'s Final Order at 2. Therefore, treatment of her second leave was indisputably a policy change.

[8] The hearing officer also found that there was an established past practice of allowing police officers to use sick leave without concurrently using FMLA leave. Proposed Decision & Order at 16. The Board found the record provided substantial evidence in support of the hearing examiner's findings of fact. Bd.'s Final Order at 11-12; *see* R.R. at 44a-45a. As discussed above, I disagree with the majority's suggestion that this past practice was not relevant here.

[9] I note the hearing examiner's finding of fact that the Township's witness "*acknowledged that there was a choice*, but the Township *was choosing* to designate [Pierluisse's] FMLA [leave] to begin on the first day she was out of work due to manpower shortages and needing her back at work." Proposed Decision & Order at 5 (emphasis added) (citing R.R. at 21a & 56a-57a).

CFC-7

> the employer must notify the employee of the employee's eligibility to take FMLA leave within 5 business days . . . .
>
> . . . .
>
> The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee . . . *whether* the leave will be designated *and will be counted as FMLA leave* within five business days . . . .

29 C.F.R. § 825.300(b)(1) & (d)(1); *see also* 29 C.F.R. § 825.301(a). I agree with the majority that this language is not ambiguous. However, I disagree with the majority's reading of this provision. In my view, nothing in the language of the regulation mandates that once an employer designates leave as FMLA-eligible, it *must count* the leave as such against the employee's wishes. Rather, I agree with the Board's conclusion that while an employer's notice of an FMLA-eligible event is mandatory, the language of the applicable regulation imposes no requirement that the employer *must* designate and count leave taken for an FMLA-*eligible* purpose as FMLA leave.[10] *See* 29 C.F.R. § 825.300(d)(5) (stating that "[*i*]f the employer requires . . . that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation . . .") (emphasis added). Indeed, such a construction would contravene the express provisions of Sections 2652(b) and 2653 of the FMLA itself, which state that "Nothing in th[e FMLA] . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under th[e FMLA] . . ." or "to diminish the obligation of an employer to comply with any [CBA] or any employment benefit program or plan that provides greater . . .

---

[10] In fact, the Township's witness expressly acknowledged that the Township had a choice whether to count Pierluisse's pre-birth sick leave as FMLA leave. *See* Proposed Decision & Order at 5.

CFC-8

rights to employees than the rights established under th[e FMLA] . . . ." 29 U.S.C. §§ 2652(b) & 2653; *see also* 29 C.F.R. § 825.700(a) & (b).

The Board concluded that under applicable case law, an employee may decline or delay FMLA leave. Bd.'s Final Order at 9-10. I agree with the Board on this question as well. A line of federal and state court and administrative decisions, cited and acknowledged by the majority, have held that the FMLA does not preclude, and an employee may affirmatively elect, refusal to use FMLA leave for an FMLA-qualifying reason. *See, e.g.*, *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 & 1247 (9th Cir. 2014) (concluding that "nothing in the FMLA precludes an employee from deferring the exercise of his or her FMLA rights," that "an employee can affirmatively decline to use FMLA leave, even if the underlying reason for seeking the leave would have invoked FMLA protection," and that "the preservation of future FMLA leave is a compelling reason why an employee might wish to do so"); *Salem Cmty. Coll. & Salem Cmty. Coll. Fac. Ass'n*, 38 N.J. Pub. Emp. Rep. 42 (N.J. Pub. Emp. Rels. Comm'n 2011) (concluding that the FMLA does not require an employer to force an employee to take FMLA leave if the employee declines it); *accord Gravel v. Costco Wholesale Grp.*, 230 F. Supp. 3d 430, 436 (E.D. Pa. 2017) (holding that an employer could not be liable for failing to grant FMLA leave that was expressly declined by the employee); *Amstutz v. Liberty Ctr. Bd. of Educ.*, 127 F. Supp. 3d 846, 854 (N.D. Ohio 2015) (same).

As the majority correctly observes, the DOL has suggested in forms and opinion letters that once an employee requests leave for an FMLA-eligible reason, the employer must designate *and count* it as FMLA leave, and the employee cannot decline to use FMLA leave by using paid leave instead, in order to save FMLA leave

for later use.  *See* DOL Form WH-382;[11] WHD Op. Letter FMLA2019-1-A at 2, R.R. at 180a; WHD Op. Letter FMLA2019-3-A at 3, R.R. at 185a.  The majority posits that in the event the DOL's regulations are ambiguous, the DOL's interpretation is entitled to deference.  However, as stated above, I agree with the majority that the regulation is not ambiguous; thus, deference to the DOL does not come into play.

Moreover, I agree with the hearing examiner that the DOL's interpretation is not entitled to overrule contrary judicial decisions.  The hearing examiner aptly and persuasively explained:

> I am unable to give controlling weight to an opinion by one [DOL Wage and Hour Division (WHD)] administrator that contradicts the overwhelming weight of federal and state authority (as well as prior DOL-WHD opinion letters) holding that mandating the use of FMLA when an employe[e] wishes to use other leave benefits instead is within the scope of bargaining, where a collective bargaining relationship exists and is not mandatory for employers.  *A single administrator of the* [*WHD*] *does not have more authority than multiple Circuit Courts of Appeals,* [and] *Federal District Courts, including Pennsylvania . . .* , all of which have concluded that choosing not to take FMLA leave in favor of paid leave benefits is permissive, optional for the employe[e] and within the scope of bargaining.  [(Citation omitted.)] Moreover, 29 [C.F.R. §] 825.701(a) provides that the FMLA shall not supersede any provision of any state or local law that provides greater family or medical leave rights.  Therefore, Pennsylvania law that provides the protection of bargaining over medical leave, where a collective bargaining relationship exists, supersedes a more restrictive interpretation of the FMLA regulations.

---

[11] "Designation Notice under the Family and Medical Leave Act," *available at* www.dol.gov/sites/dolgov/files/WHD/legacy/files/WH-382.pdf (last visited October 6, 2022).

Proposed Decision & Order at 13 (emphasis added).[12] Like the hearing examiner, I find judicial decisions more persuasive than an agency opinion letter. *Accord Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005) (explaining that a court's interpretation of a statute overrides an agency's interpretation if the court decision holds the statute is unambiguous). For these reasons, I conclude that an employer's designation of leave as FMLA-eligible is mandatory, but requiring the employee to use FMLA leave is discretionary. Discretionary aspects of the FMLA are subject to collective bargaining under Act 111 read *in pari materia* with the PLRA. *Int'l Ass'n of Firefighters Loc. #1749 v. City of Butler*, 32 PPER ¶ 32066 (proposed decision & order (PDO), Mar. 16, 2001); *Int'l Ass'n of Firefighters, Loc. 1803 v. City of Reading*, 31 PPER ¶ 31057 (Final Order, Mar. 28, 2000); *AFSCME Loc. 1971 v. Phila. Off. of Hous. & Cmty. Dev.*, 27

---

[12] The majority points out that the hearing examiner's analysis here was contrary to one of his own previous decisions, in which he opined that placement of an employee on FMLA leave was a management prerogative. ___ A.3d at ___, Maj. Op. at 49-50 (quoting *New Cumberland Police Emps. v. New Cumberland Borough*, 43 PPER ¶ 28 (proposed decision & order (PDO), Aug. 2, 2011)). However, in that earlier decision, the hearing examiner observed that there was then no applicable Board precedent on the issue. By contrast, here, the Board has adopted the hearing examiner's analysis that is counter to the reasoning in *New Cumberland*. As the majority notes, "hearing examiner decisions have some weight when the Board has left them in effect. . . ." ___ A.3d at ___, Maj. Op. at 50 n.55 (quoting *Fraternal Ord. of Police, Star Lodge No. 20 v. Pa. Lab. Rels. Bd.*, 522 A.2d 697, 700 (Pa. Cmwlth. 1987), *aff'd*, 560 A.2d 145 (Pa. 1989)) (additional quotation marks omitted).

Moreover, in his opinion here, the hearing examiner expressly disclaimed and disagreed with his previous reasoning in *New Cumberland*, stating:

> With respect to this [hearing] examiner's prior decision in *New Cumberland*, . . . that decision was wrongly decided and contradicts the overwhelming weight of authority which consistently requires that mandating concurrent use of FMLA leave with other leave benefits is a mandatory subject of bargaining. In this regard, I reject that decision, and I refuse to follow it. *New Cumberland* . . . is not binding authority here.

Proposed Decision & Order at 15.

PPER ¶ 27214 (PDO, Aug. 27, 1996); *accord Verizon N., Inc. & Int'l Brotherhood of Elec. Workers, Loc. 1637*, 352 NLRB 1022 (2008) (under National Labor Relations Act, 29 U.S.C. §§ 151-169, employer was required to bargain before changing prior policy of allowing employees to stack sick leave and FMLA leave rather than running them concurrently).

Accordingly, I would hold that the Township's change of policy to require FMLA leave to run concurrently with sick leave was subject to collective bargaining. By implementing the change unilaterally, the Township violated Act 111 as read *in pari materia* with the PLRA and committed an unfair labor practice.[13]

### III. Weighing the Parties' Interests under Act 111

Act 111 requires bargaining before unilateral changes in mandatory subjects of bargaining. *City of Erie v. Pa. Lab. Rels. Bd.*, 32 A.3d 625, 637 (Pa. 2011). As the majority observes, "[t]his fundamental mandate of labor law is

---

[13] The Board suggested in its brief that this case presented "unique circumstances" militating in favor of requiring collective bargaining, because Pierluisse's pregnancy-related disability and her request for FMLA leave after the birth of her child were "separate and distinct events" with respect to her use of sick leave and FMLA parental leave. Bd.'s Br. at 17 n.7. I disagree with the Board on this point. Neither the pregnancy-related reason for Pierluisse's disability prior to childbirth nor the childcare reason for her request for FMLA leave after childbirth was relevant to the question of the Township's duty to bargain over its change of policy. Moreover, neither the reason for using sick leave nor the reason for using FMLA leave rendered the circumstances unique.

As the majority aptly observes, "the Board's concession that the Township has the managerial right to count FMLA leave concurrently with paid leave in some situations, but not others, defies logic." ___ A.3d at ___, Maj. Op. at 53. However, I disagree with the majority's conclusion concerning the effect of the Board's error in logic. I believe the Township could not unilaterally count paid sick leave and FMLA leave concurrently in *any* situation. The Township had a past policy of allowing police officers to use their unlimited paid sick leave without concurrently using FMLA leave, without regard to the reason for using sick leave. *See* R.R. at 44a-45a. Therefore, regardless of the specific circumstances here, requiring concurrent use of sick leave and FMLA leave was a unilateral change in policy that required prior bargaining.

applicable regardless of whether the [CBA] expressly mentions such benefits; whether they have been incorporated into the [CBA] by reference; or whether the agreement is silent on that mandatory subject of bargaining." *Id.*

Bargaining is mandatory on any subject that "bears a rational relationship to the employees' duties . . ." or to matters such as compensation. *Pa. State Park Officers Ass'n v. Pa. Lab. Rels. Bd.*, 854 A.2d 674, 680 (Pa. Cmwlth. 2004). Thus, employee leave is normally a subject of mandatory bargaining. *See, e.g.*, *Schmidt v. Borough of Stroudsburg*, 670 A.2d 208, 210 n.9 (Pa. Cmwlth. 1996) (stating that generally, the number of sick and vacation days for public employees are fixed by the collective bargaining agreement); *Clarion-Limestone Area Sch. Dist. v. Pa. Lab. Rels. Bd.*, 646 A.2d 1280, 1282 (Pa. Cmwlth. 1994) (observing that a public employer cannot make unilateral changes in its policy concerning terms and conditions of employment and that leave policies are mandatory subjects of bargaining).

However, "managerial prerogatives" are not subject to mandatory bargaining. *City of Allentown v. Int'l Ass'n of Fire Fighters Loc. 302*, 157 A.3d 899, 906 (Pa. 2017). Managerial prerogatives are "matters of managerial decision-making that are fundamental to public policy or to the public enterprise's direction and functioning . . ."; they include matters such as an employer's functions and programs, budget, organizational structure, and selection and direction of its personnel. *Id.* I agree with the majority that, as a general rule, "[w]here a managerial policy concern substantially outweighs any impact the issue will have on employees, the subject will be deemed a managerial prerogative and non-bargainable." ___ A.3d at ___, Maj. Op. at 44 (quoting *Schuylkill Haven Borough v. Schuylkill Haven*

*Police Officers Ass'n*, 914 A.2d 936, 941 (Pa. Cmwlth. 2006) (internal quotation marks omitted)).

> The majority reasons:

> This Court agrees that police officer staffing "strike[s] at the heart of policy decisions that directly implicate the public welfare," *Borough of Ellwood City* [*v. Pennsylvania Labor Relations Board*, 998 A.2d 589, 600 (Pa. 2010)], and "substantially outweighs any impact the issue will have on employees[']" working conditions, *Schuylkill Haven Borough*[, 914 A.2d at 941], "and, thus, should be insulated from the give-and-take of collective bargaining." *Borough of Ellwood City*, 998 A.2d at 600.

___ A.3d at ___, Maj. Op. at 53. In an instance where a public employer has retained close unilateral control over employee leave policies, I would not necessarily disagree with this as a general premise. However, *Borough of Ellwood City* concerned a borough's unilateral prohibition on the use of tobacco products on or in Borough-owned buildings, vehicles, and equipment, and *Schuylkill Haven Borough* related to the number of police officers the borough would employ and the amount of their pension contributions. *See Borough of Ellwood City*, 998 A.2d at 592; *Schuylkill Haven Borough*, 914 A.2d at 938. Neither is instructive in this case.

Here, *the Township has already bargained with the Union over police officers' leave time*, and the CBA expressly provides the police officers with *unlimited* paid sick leave. The Township is not contending that the amount of sick leave was not subject to bargaining. In the specific circumstances here, I can only conclude that *the CBA reflects the parties' agreement* to limit the extent to which the Township's interest in police officer staffing levels and public welfare can permissibly affect the police officers' leave rights. As a result, I do not believe a further balancing test is needed concerning the parties' competing interests.

CFC-14

Allowing the Township to unilaterally forbid stacking of paid sick leave and FMLA leave could mean that a police officer who was disabled for 12 or more weeks in the same year would be unable to obtain needed leave for a family emergency that might arise in that year. In effect, such a consequence could expose that officer to job loss as a *de facto* consequence of using sick leave which, under the CBA, is supposed to be unlimited. Accordingly, I conclude that the Township's unilateral change in policy to force its police officers to use their FMLA leave concurrently with their unlimited paid sick leave impermissibly reduces their previously existing job protection without bargaining.

### IV. Past Practice

Inasmuch as the Township admitted it unilaterally changed its previous policy by forcing Pierluisse to use FMLA leave concurrently with sick leave, I would hold that the policy change required prior bargaining, such that the Union did not need to establish that the Township's application of its previous policy also reflected a binding past practice. Nonetheless, I respectfully disagree with the majority's conclusion that the Union failed to establish such a past practice.

As discussed in Section I above, the Township's previous practice was not reflected solely in its treatment of the single event of Pierluisse's first parental leave. Rather, the Board found there was a longstanding practice of allowing the Township's police officers to use their unlimited paid sick leave without concurrently using FMLA leave. Bd.'s Final Order at 12; *see* R.R. at 44a-45a. In my view, as discussed above, the Township's altered treatment of Pierluisse's parental leave for the birth of her second child also altered this past practice by

requiring FMLA leave to run concurrently with paid sick leave.[14]  Accordingly, the Township was required to bargain with the Union before instituting such an alteration.

## V. Conclusion

For the foregoing reasons, I would affirm the Board's decision. Accordingly, I respectfully dissent.

_____

CHRISTINE FIZZANO CANNON, Judge

---

[14] As observed above, it was also contrary to the provisions of the FMLA, which expressly provides that eligibility for FMLA parental leave related to childbirth begins on the date of the birth.  *See* 29 U.S.C. § 2612(a)(2).

CFC-16